PATIENCE C. JACKLIN (FORMERLY PATIENCE C. RIVKIN), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

DEWEY K. RIVKIN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4722–79, 7554–79.    Filed August 17, 1982.

*Douglas E. McKinley*, for the petitioner in docket No. 4722–79.

*Paul A. Burns*, for the petitioner in docket No. 7554–79.

*Patrick Putzi*, for the respondent.

### OPINION

PARKER, *Judge*: Respondent determined deficiencies in petitioners' 1975 Federal income taxes in the amounts of $3,007.36 in docket No. 4722–79 and $12,260.39 in docket No. 7554–79. Petitioner Patience C. Jacklin (formerly Patience C. Rivkin) (Patience or the wife) filed a motion for summary judgment in her favor in docket No. 4722–79, under Rule 121, Tax Court Rules of Practice and Procedure, and respondent at the same time filed a motion for summary judgment in his favor in docket No. 7554–79.[1] Patience and respondent filed briefs in support of their respective motions, and petitioner Dewey K.

---

[1]Unless otherwise indicated, all Rule references herein are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year here involved.

Rivkin (Dewey or the husband) filed a brief in opposition to both motions.

The issue for decision is whether payments made to the wife during 1975 constitute alimony deductible by the husband under section 215 and includable in income by the wife under section 71(a). To resolve this question, we must decide whether the husband made the payments under a "written separation agreement" within the meaning of section 71(a)(2).

The pertinent facts have been stipulated for purposes of our ruling on the motions for summary judgment. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Patience resided in McLean, Va., at the time she filed her petition in docket No. 4722–79. Dewey also resided in McLean, Va., at the time he filed his petition in docket No. 7554–79. Both petitioners timely filed individual Federal income tax returns for the year 1975 with the Internal Revenue Service Center in Memphis, Tenn.

Dewey and Patience were married on May 8, 1965, in Arlington, Va. No children were born or adopted of their marriage.

Due to marital difficulties that subsequently developed, Dewey and Patience executed a written "Separation Agreement" dated April 3, 1973.[2] The preamble to the agreement recited certain facts surrounding its execution and stated its purpose as follows:

> WHEREAS the parties have separated and are now living apart and choose to remain apart, and
>
> WHEREAS the Wife is working and chooses to remain working and independent, and
>
> WHEREAS the parties desire to confirm their separation and make arrangements in connection therewith, including the settlement of their property rights, and the support and maintenance of the Wife * * *

Paragraph 4 of the agreement stated that the parties had

---

[2]Patience has conceded, solely for purposes of our ruling on her motion for summary judgment, that she executed this agreement. In the event her motion is denied, however, she maintains that she did not execute that written agreement. Patience also alleged in her petition that she and her husband were not separated until August of 1975 and that the only valid, written separation agreement that ever existed between her and her husband was not executed or operative until Oct. 1, 1976. In the parties' stipulation of facts, Patience continues to maintain those positions, but concedes to the contrary solely for purposes of her motion for summary judgment.

divided their personal effects and property between them. In paragraphs 6 and 7 of the agreement, respectively, Dewey promised to retain Patience as beneficiary of a life insurance policy on his life and to reimburse her for "all medical and dental expenses" incurred by her and her two minor children by a previous marriage as long as they were covered by the medical reimbursement program of the husband's business.

In addition, the agreement contained the following provisions for Patience's support:

(5) The Husband shall pay the Wife for her assistance and maintenance whatever supplementary funds are necessary to sustain a standard of living equivalent to that which obtained before the separation. The Wife intends to work and be independent. If the Wife ceases to work, payment will increase to meet the needs of the Wife. The payments will be at least quarterly and will continue until one of the following events should first occur: (a) the death of the Husband; (b) the remarriage of the Wife; (c) the death of the Wife.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(9) The Wife acknowledges that the provisions of this Agreement for her support and maintenance are fair, adequate, and satisfactory to her, and in keeping with her accustomed standard of living and her reasonable requirements. The Wife, therefore, accepts these provisions in full and final settlement and satisfaction of all claims and demands for alimony or for any other provision for support and maintenance, and fully discharges the Husband from all such claims and demands except as provided in this Agreement.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(11) If the parties hereto are divorced and the Wife thereafter remarried [sic], all obligations of the Husband to provide for the support and maintenance of the Wife shall cease.

Finally, paragraph 10 expressly provided that the agreement was to be incorporated in any decree of divorce later entered, but that the agreement would not merge in such decree and would survive such a decree and be forever binding and conclusive on the parties.

Dewey and Patience filed separate individual Federal income tax returns for 1973, 1974, and 1975. On his 1973 return, Dewey deducted $7,000 for separate maintenance payments to Patience, but the record does not show how Patience treated any such payments on her 1973 tax return.[3]

---

[3] The parties' stipulation on this matter is even more equivocal than the Court's

In 1974, Dewey made payments to Patience totaling $21,325 and deducted that entire amount as separate maintenance payments. Patience received amounts totaling $21,325 from Dewey in 1974 and reported that entire amount as alimony on her return. The 1974 payments are evidenced in part by 39 personal checks made out at irregular intervals and in varying amounts from $110 to $2,100.[4] All of the checks were payable to Patience with the exception of one $900 check to Hicks Realty and one $201.35 check to McGuire Appliances, Inc. The only check showing a purpose for any of the payments was the check to Hicks Realty which bore a notation about a month's rent and deposit.

During the taxable year 1975, Dewey made payments to Patience by personal checks in amounts totaling $24,250. The payments are evidenced by 30 checks made out at irregular intervals and in varying amounts ranging from $50 to $3,900. The checks list Patience as the payee but do not specify a purpose for any of the payments. Dewey also paid $129.20 for medical services for Patience by a personal check to Holy Cross Hospital dated May 14, 1975.

On his 1975 tax return, Dewey claimed a deduction of $24,379.20 labeled "Separate Maintenance Agreement" for the full amount of the payments he made to Patience during 1975. On her 1975 tax return, Patience reported $14,400 as alimony received from Dewey.

On October 1, 1976, the parties executed a written property settlement agreement with terms substantially different from the terms of their earlier separation agreement. This agreement contained a provision fixing definite monthly amounts payable for Patience's support beginning on October 1, 1976, and ending on February 1, 1987. Those payments were to terminate upon the death or remarriage of Patience. Dewey and Patience were divorced on January 5, 1977, and the

---

paraphrase thereof. Dewey takes the position that he made payments of $7,000 to Patience in 1973 and deducted that amount on his return. Patience takes the position that she did not receive any amount from Dewey during 1973 and that she does not recall whether she reported any amount as alimony on her 1973 return. For purposes of the pending motions for summary judgment, the Court will disregard these conflicts and will draw no inferences in regard to 1973.

[4]The 1974 checks attached to the stipulation total only $18,886.35. The record does not indicate how the balance of the $21,325 was paid to Patience in 1974.

divorce decree affirmed, ratified, and incorporated petitioners' property settlement agreement of October 1, 1976. The characterization of payments made under the 1976 agreement is not in issue in this case.

The present dispute concerns the proper treatment for Federal tax purposes of payments made by Dewey to Patience during 1975. In his notices of deficiency, respondent took inconsistent positions in order to protect the revenue and to insure consistent treatment of the payments in question.[5] Respondent determined that the full amount of payments by Dewey to Patience during 1975 was includable in income by Patience under section 71(a)(2) and was not deductible by Dewey under section 215. However, in the motions for summary judgment now before us, respondent and Patience argue that Dewey's 1975 payments are not deductible because they were not made under a "written separation agreement" within the meaning of section 71(a)(2).

In order for us to grant the motions for summary judgment, Patience and respondent must show that there is no genuine issue as to any material fact and that they are entitled to a decision in their favor as a matter of law. Rule 121(b);[6] *Shiosaki v. Commissioner*, 61 T.C. 861, 863 (1974). Because this burden is on the moving party in a motion under rule 121 or rule 56 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 56), the factual materials presented and the inferences therefrom must be viewed in the light most favorable to the party opposing the motion. *Adickes v. Kress & Co.*, 398 U.S. 144, 157 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Hoeme v. Commissioner*, 63 T.C. 18, 20 (1974).

In the present case, Dewey and Patience filed separate returns for the taxable year 1975. Furthermore, Patience has

---

[5]Respondent disallowed the $24,379.20 deduction claimed by Dewey and increased Patience's alimony income to a total amount of $24,379.20. Patience had reported alimony income of $14,400 on her return, and, during the audit, agreed to an additional amount of $1,729.20, the tax on which was assessed before the statutory notice of deficiency was issued to her. The statutory notice increased her alimony income by an additional $8,250. Dewey here claims the full deduction of $24,379.20, and Patience asserts that none of that amount is includable in her income and that she has in fact overpaid her taxes for 1975.

[6]The Notes to Rule 121 (71 T.C. 1204) state that the summary judgment procedure is adopted from rule 56 of the Federal Rules of Civil Procedure.

conceded for purposes of the present motions that she and Dewey separated in 1973, that they executed the 1973 separation agreement, and that Dewey made the disputed 1975 payments to her under that agreement and because of the marital or family relationship. The courts have held it proper to grant summary judgment under Fed. R. Civ. P. 56 where the moving party concedes that there is no genuine issue as to any material fact if his legal theory is accepted, but at the same time maintains that there is such an issue if his theory is rejected or his opponent's theory is adopted. *Cram v. Sun Insurance Office, Ltd.*, 375 F.2d 670, 674 (4th Cir. 1967); *American Fidelity & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965); *McLain v. Commissioner*, 67 T.C. 775, 778 (1977). Accordingly, Patience as the moving party has conceded the absence of any factual issue and the truth of Dewey's allegations only for purposes of her own motion. *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948); *McLain v. Commissioner, supra* at 778; C. Wright & A. Miller, Federal Practice and Procedure, Civil sec. 2720 n. 83 (1973).

Therefore, based on Patience's concessions and viewing the evidence most favorably to Dewey, we also must treat the statements in the 1973 agreement and the inferences therefrom as true for purposes of the present motions. Thus, we assume the facts and inferences conceded by Patience include (1) that the parties were living separate and apart as of April 3, 1973, (2) that the parties executed the written separation agreement dated April 3, 1973, (3) that Dewey made payments in 1975 totaling $24,379.20 under that agreement, (4) that Dewey's 1975 payments to Patience under paragraphs 5 and 7 of the agreement were "periodic,"[7] and (5) that the payments were made because of their marital or family relationship.

This leaves for decision the legal question raised in the motions of whether the payments were made under a "written separation agreement" within the meaning of section 71(a)(2). Patience and respondent argue that in order for a written separation agreement to qualify under section 71(a)(2), it must contain a definite statement of the amount of support to be

---

[7]Assuming that Dewey's 1975 personal checks represented payments to Patience under pars. 5 and 7 of the agreement, the fact that those payments were made at irregular intervals does not prevent them from being "periodic." Sec. 71(a)(2).

paid to the wife. Dewey argues that the 1973 agreement qualifies under section 71(a)(2) notwithstanding its failure to provide for a specific amount of support payable to Patience.

Neither section 71(a)(2) nor the regulations promulgated thereunder define what constitutes a "written separation agreement."[8] The predecessor of section 71 was enacted to tax support payments to the recipient spouse and to relieve the payor spouse from the burden of being taxed on such payments by making them deductible by him. H. Rept. 2333, 77th Cong., 2d Sess. 46 (1942), 1942-2 C.B. 427; S. Rept. 1631, 77th Cong., 2d Sess. 83-87 (1942), 1942-2 C.B. 568. Initially, this benefit was available only in the case of divorce or a legal separation. Sec. 71(a)(1).[9] Section 71(a)(2) extended this benefit to spouses who are not divorced or legally separated under a court decree but who are in fact separated and enter into a written separation agreement. H. Rept. 1337, 83d Cong., 2d Sess. 9 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 10 (1954). The regulations under section 71(a)(2) provide that such payments

---

[8]Sec. 71(a)(2) provides:

(2) WRITTEN SEPARATION AGREEMENT.—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

Sec. 1.71-1(b)(2), Income Tax Regs., provides:

(2) *Written separation agreement.* (i) Where the husband and wife are separated and living apart and do not file a joint income tax return for the taxable year, paragraph (2) of section 71(a) requires the inclusion in the gross income of the wife of periodic payments (whether or not made at regular intervals) received by her pursuant to a written separation agreement executed after August 16, 1954. The periodic payments must be made under the terms of the written separation agreement after its execution and because of the marital or family relationship. Such payments are includible in the wife's gross income whether or not the agreement is a legally enforceable instrument. Moreover, if the wife is divorced or legally separated subsequent to the written separation agreement, payments made under such agreement continue to fall within the provisions of section 71(a)(2).

[9]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

are includable in the wife's gross income whether or not the written separation agreement is a legally enforceable instrument. Sec. 1.71–1(b)(2), Income Tax Regs. The regulations for both section 71(a)(1) and section 71(a)(2) also require such an agreement to make specific the husband's obligation to support the wife. Section 1.71–1(b)(4), Income Tax Regs., provides that:

(4) *Scope of Section 71(a).* Section 71(a) applies only to payments made because of the family or marital relationship in recognition of the general obligation to support which is made specific by the decree, instrument, or agreement. Thus, section 71(a) does not apply to that part of any periodic payment which is attributable to the repayment by the husband of, for example, a bona fide loan previously made to him by the wife, the satisfaction of which is specified in the decree, instrument, or agreement as a part of the general settlement between the husband and wife.

Respondent and Patience argue that the periodic payments made by Dewey in this case cannot, as a matter of law, be viewed as having been made under a "written separation agreement" within the meaning of section 71(a)(2) "because the written separation agreement does not contain a definite statement as to the amount of support to be paid to Patience." In support of their arguments, Patience and respondent cite certain memorandum opinions of this Court involving questions as to whether or not certain documents, such as a letter from the husband, constituted a written separation agreement.[10] Respondent asserts, and properly so, that those cases stand for the proposition that the unilateral actions of one spouse do not constitute a written separation agreement and are merely a unilateral offer on the part of that spouse. That is not the case before us. For purposes of these motions, we have a written separation agreement executed by both Dewey and Patience. None of those cases involved an agreement executed by both spouses.

Respondent places great reliance on certain language in those memorandum opinions.[11] However, that language was

---

[10]See *Saniewski v. Commissioner*, T.C. Memo. 1979–337; *Auerbach v. Commissioner*, T.C. Memo. 1975–219; *Garner v. Commissioner*, T.C. Memo. 1973–79.

[11]Respondent quotes the following language from *Saniewski v. Commissioner*, T.C. Memo. 1979–337:

"Clearly the statute contemplates that the parties enter into an agreement. As such, there

directed to the existence vel non of a *written* agreement reflecting a meeting of the minds of the spouses, *i.e.*, whether or not the parties had entered into a written agreement. In *Saniewski,* there was a letter written by the husband to which the wife never agreed and with which the husband, himself, failed to comply. In *Garner,* there was proof only of an oral agreement.

Certainly, the absence of a stated amount of support is a factor to consider in determining whether or not there is an agreement (written or oral) between the spouses. However, it is quite another matter to say that the absence of a stated amount of support in a written separation agreement completely vitiates the parties' agreement as a matter of law. The Court's language in those memorandum opinions, quoted in note 11, does not purport to lay down a rule that an agreement executed by both spouses and providing for spousal support payments is not a "written separation agreement" as a matter of law if it fails to set out a definite amount of support.

Neither section 71(a) nor the regulations thereunder expressly require that a written separation agreement contain a definite statement of the amount of support. Only section 71(b) dealing with child support requires that the decree or agreement "fix" the sum payable for support of the minor children of the husband "in terms of an amount of money or a part of the payment." Sec. 71(b); *Commissioner v. Lester,* 366 U.S. 299 (1961). That strict requirement is only for purposes of distinguishing between payments for the wife's support which are taxable to her and payments for child support which are not. Failure to "fix" an amount for child support results in the entire payment's being taxed to the wife, but it does not render

---

must be a meeting of the minds or understanding between the parties as to the terms. In addition, to have any resemblance of a support agreement, the document must set forth the amount of the support, the duration of the payments, and the support items covered by the payments."

Similarly, respondent relies on the following statement from *Garner v. Commissioner,* T.C. Memo. 1973–79:

"A *written* instrument, therefore, has always been required under the statute. Congress was interested in requiring a clear statement of the separation agreement so it could be determined with certainty the amount of payments to be included in the wife's income and the allowable corresponding deduction available to the husband * * * [Emphasis in original.] "

the written agreement otherwise legally insufficient. Here, there are no children and no child support payments involved. The payments to Patience were entirely for spousal support.

The statutory requirements under section 71(a)(2) are that the payments be "periodic," be "made under such agreement," and be made "because of the marital or family relationship." Absent a statement of a definite dollar amount or some formula for determining the amount properly payable under paragraph 5 of the agreement in this case, petitioners face a difficult task of proving that the payments in question qualify under section 71(a)(2). That practical problem is not our concern at the moment. Here, for purposes of their motions, respondent and Patience have conceded that the payments were made under the 1973 separation agreement and were made because of the family or marital relationship.

The parties have not cited, and the Court has not found, any case exactly like the present one. However, a case arising under the predecessor to section 71(a)(1) provides some guidance. *Jefferson v. Commissioner*, 13 T.C. 1092 (1949). Section 71(a)(1) and its predecessor, like section 71(a)(2), requires that payments be made under the decree or written instrument and because of the marital or family relationship. In *Jefferson*, the husband agreed in a letter whose terms were accepted by the wife (and, hence, a written instrument incident to the divorce) to pay the wife:

a sum sufficient, according to the full measure of the standard of living to which you have become accustomed, to cover all amounts required for your suitable maintenance, support and comfort during each year. * * *

The letter agreement went on to state that at that time (1941), $6,000 a year would seem to be sufficient, but that more would be paid if necessary. 13 T.C. at 1094–1095. The amounts actually paid by the husband to the wife during the years before the Court were less than the $6,000 figure mentioned, but the Court found as a fact that the payments of $4,217 in 1942 and $4,813.14 in 1943 were for the wife's support and maintenance and were made under a written instrument incident to divorce (the letter agreement).[12] The Court square-

---

[12] In *Saniewski v. Commissioner*, T.C. Memo. 1979–337, we considered the fact that the husband's letter stated an amount of $800 per month, whereas he actually sent his wife $800

ly rejected respondent's argument that there was no legal obligation on the part of the husband to make the payments, and held that the payments were deductible by him.

Another somewhat analogous case lends support to our approach here. *Bogard v. Commissioner*, 59 T.C. 97 (1972). Like the present case, *Bogard* involved a written agreement between the spouses providing for the wife's support and maintenance. However, the agreement itself made no reference to the spouses' separation. Respondent argued that the agreement did not constitute a "written separation agreement" within the meaning of section 71(a)(2) because the document did not state that the parties had separated and were living apart. The Court declined to follow such a formalistic approach and held that the statute merely required an actual separation which could be established by extrinsic evidence. The husband was permitted to prove that he and his wife were in fact separated. The Court declined to hold that the agreement was insufficient as a matter of law.

In the *Bogard* case, we discussed the general requirements of section 71(a)(2), stating (59 T.C. at 101) that:

> Logically, it appears Congress was interested in a clear statement in written form of the terms of support where the parties are separated. In this manner it is administratively convenient for the Commissioner to apprise himself of the amount of gross income to the wife and the corresponding deduction allowable to the husband. Since the statute requires an actual separation, formal expression of this in the separation agreement is supererogatory. To insist that the parties confirm in writing the demonstrable fact of their continuous separation is to elevate form over substance by concentrating on a tree to the exclusion of the forest. What matters is that the parties executed a written agreement in contemplation of a separation status which status in fact continued to exist throughout the years in question. Moreover, the "boiler-plate" requirement advocated by the respondent and Bridget seems unduly harsh and unreasonable, especially where the parties are often unfamiliar with legal intricacies as in the present case. A principal result would be to snare the unwary or uninformed.

In the present case, the failure to recite a dollar amount for the support payments also creates administrative inconvenience for the Commissioner and problems of proof for the

---

per month, then $150 per week, and finally $75 per week. We considered those differing amounts as factors showing that the husband's letter was merely a unilateral offer to enter into an agreement and did not constitute an agreement between the parties.

husband. As with the fact of separation in *Bogard*, here, too, the nature of the payments should be resolved as a matter of fact and not as a matter of law.[13] We agreed in *Bogard* that making the matter a question of law would "elevate form over substance" and would "snare the unwary or uninformed." We think that is true here also.

As in *Jefferson v. Commissioner, supra*, the agreement in the present case is not wholly without some standard for the wife's support and maintenance. Under paragraph 5 of their agreement, Dewey is to —

pay the Wife for her assistance and maintenance whatever supplementary funds are necessary to sustain a standard of living equivalent to that which obtained before the separation * * *

And in paragraph 9 of the agreement, Patience acknowledges that the provisions for her support and maintenance are in keeping with "her accustomed standard of living and her reasonable requirements." For the administrative convenience of the Commissioner and for the domestic tranquility of the spouses, it would certainly be better if the terms of the written separation agreement were more explicit. An agreement such as this one foments disputes and provides another battlefield on which the warring spouses can renew hostilities. However, that the agreement may be unwise or poorly drafted does not mean that it is necessarily insufficient as a matter of law under section 71(a)(2).

The failure to provide for a definite amount of support creates problems of proof as to whether or not the payments were made under the agreement for support or made for other purposes such as repayment of a loan or a settlement of property rights. Generally, we resolve questions as to whether payments are "alimony" or something other than alimony based on all the facts and circumstances of the particular case,

---

[13]In *Bogard v. Commissioner*, 59 T.C. 97 (1972), we declined to follow a revenue ruling that required that a written separation agreement must recite that the parties have separated and are living apart. 59 T.C. at 102. Here, too, there is a revenue ruling. In Rev. Rul. 73–409, 1973–2 C.B. 19, respondent ruled that a written separation agreement, to be valid under sec. 71(a)(2), must contain a definite statement as to the amount of the wife's support. Revenue rulings do not have the force of law and are merely statements of the Commissioner's litigating and administrative position. See *Stubbs, Overbeck & Associates v. United States*, 445 F.2d 1142, 1146–1147 (5th Cir. 1971); *Estate of Lang v. Commissioner*, 64 T.C. 404, 406–407 (1975), affd. on this point 613 F.2d 770, 776 (9th Cir. 1980).

including the terms of the spouses' agreement or divorce decree. However, we are not bound by the labels used in the spouses' written agreements or in the divorce decrees. See *Beard v. Commissioner*, 77 T.C. 1275 (1981), on appeal (9th Cir., June 15, 1982); *Schottenstein v. Commissioner*, 75 T.C. 451 (1980); *Westbrook v. Commissioner*, 74 T.C. 1357 (1980); *Warnack v. Commissioner*, 71 T.C. 541 (1979); *Mirsky v. Commissioner*, 56 T.C. 664 (1971).

Dewey paid $24,379.20 to Patience in 1975. If he can establish that he and Patience were in fact separated and living apart, that they executed the written separation agreement dated April 3, 1973, that the $24,379.20 was paid pursuant to that agreement, and that the payments were made because of the marital or family relationship (and not as a repayment of a loan, settlement of property rights, etc.), we think he should receive the deduction and that Patience should include the amount in her income.

This case should be resolved on its facts and not as a matter of law. The motions for summary judgment filed by respondent and Patience will be denied.

*An appropriate order will be entered.*

Reviewed by the Court.

WHITAKER, *J.*, concurring: I agree with the majority that the agreement here is not insufficient as a matter of law for failure to state within the four corners of the instrument a definite amount for the support payments. I think it important, however, to go beyond the comment of the majority that the agreement here is "not wholly without some standard for the wife's support and maintenance." The narrow issue which we have resolved in these motions for summary judgment is whether section 71(a)(2) requires that the agreement state explicitly the dollar amount of the support obligation. We have determined that it does not. However, if the document did not provide some mechanism for determination of the support obligation, which would be deemed to be sufficient under general principles of contract law to create an enforceable bilateral contract, we should, nevertheless, find at this junc-

ture that the agreement in this case does not constitute a "written separation agreement," and, therefore, hold for the movants. I conclude that this contract is sufficient as a matter of law, and I believe that the majority has reached the same conclusion.[1] We should affirmatively so hold on the rationale set forth herein.

Section 71(a)(2) uses the terminology "written separation agreement." One would normally assume that such a document would be required to reflect a meeting of the minds of the parties enforceable under applicable contract law in the appropriate State forum.[2] However, the legislative history underlying section 71 includes a statement that payments under such an agreement are taxable to the spouse "whether or not the agreement is an instrument enforceable in a court of law." S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 171 (1954); H. Rept. 1337, 83d Cong., 2d Sess. A21 (1954). The regulations simply parrot the legislative history. Sec. 1.71–1(b)(2), Income Tax Regs. Neither the Committee reports nor the regulations give us any help as to the intent of Congress in directing that we should not be concerned with "legal enforceability." However, some indication of congressional intent may come from the Senate report[3] on the 1939 Code predecessor provision which explains that uniformity of treatment of alimony or payments in the nature of alimony is intended "regardless of variance in the laws of the different states concerning the existence or continuation of an obligation to pay alimony."

I do not believe that payments made by one spouse to another under an instrument wholly unenforceable under normal rules of contract law were intended to be deductible by the payor and taxable to the payee. The majority recognizes that there is a distinction between the facts of this case and a situation where one spouse makes payments gratuitously or voluntarily as a unilateral act and not pursuant to "a written separation agreement executed by both" parties. Where the

---

[1]There remains for decision at trial on the merits several fact questions conceded by the wife for purposes of this proceeding only. See note 2 in the majority opinion.

[2]See generally 1 A. Corbin, Contracts sec. 9 (West 1963).

[3]S. Rept. 1631, to accompany H.R. 7378 (Pub. L. 753), 77th Cong., 2d Sess. 83 (1942), 1942–2 C.B. 568.

language of an "agreement" is so vague as to indicate there was no meeting of the minds on the amount of support and no basis for determining the nature or extent of the obligation, any payment would be gratuitous. The Court of Appeals for the Fifth Circuit has recognized this distinction. See *Taylor v. Campbell*, 335 F.2d 841, 846 (5th Cir. 1964).

We cannot and should not ignore the use in the statute of the term "written separation agreement." Neither should we be misled by the brief and obscure reference to the issue of enforceability under State law. One can surmise with some foundation that Congress was concerned with oddities of State laws such as those of Texas, which are discussed in *Taylor v. Campbell, supra.* Thus, it makes sense to ignore peculiar quirks of State divorce law, but still to apply normal contract law principles. Since we do not have a Federal common law, we are dependent upon the common law principles recognized in State court decisions. Unless we can find that the parties have intended to make a contract, as the term "contract" is normally used, we should not find that they have entered into a written separation agreement. However, "that the parties have left some matters to be determined in the future should not prevent enforcement, if some method of determination independent of a party's mere 'wish, will, and desire' exists, either by virtue of the agreement itself or by commercial practice or other usage or custom." 1 A. Corbin, Contracts sec. 95, at 401–402 (West 1963). Extraneous facts are frequently pertinent in the interpretation of a contract.

Under the facts of this case, the omission of a fixed amount of support is immaterial since there is in the written separation agreement an obligation referable to the existing standard of living of the wife, which fact is capable of independent proof. I believe that the foundation of the Court's opinion must be that the standard set forth in paragraph 5 of the agreement herein is sufficiently measurable that it can be applied by the Court to determine the amount of alimony. Therefore, we can, and should, characterize the instrument as an enforceable bilateral contract (assuming, of course, that it is what it purports to be). 1 A. Corbin, *supra* at sec. 9.[4] See and compare

---

[4]"In the process of negotiating an agreement, a term that is most frequently left indefinite and to be settled by future agreement, or by some other specified method, is the price in

*Ithaca Trust Co. v. United States*, 279 U.S. 151 (1929); *State Street Bank & Trust Co. v. United States*, 313 F.2d 29 (1st Cir. 1963).

TANNENWALD, FEATHERSTON, STERRETT, WILES, and NIMS, JJ., agree with this concurring opinion.

money—the compensatory exchange for the subject matter of purchase. This is true both of agreements for the rendition of service and of those for the purchase and sale of goods. If the parties provide a practicable, objective method for determining this price or compensation, not leaving it to the future will of the parties themselves, there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract. * * * [A. Corbin, *supra* sec. 97, at 423–425. Fn. ref. omitted.]"

"An agreement is not unenforceable for lack of definiteness of price or amount if the parties specify a practicable method by which the amount can be determined by the court without any new expression by the parties themselves. [A. Corbin, *supra* sec. 98, at 433–434. Fn. ref. omitted.]"