RALPH E. WALLS and JOYCE F. WALLS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walls v. Commissioner
Docket Nos. 14820-80, 21448-80.
United States Tax Court
T.C. Memo 1983-504; 1983 Tax Ct. Memo LEXIS 276; 46 T.C.M. (CCH) 1158; T.C.M. (RIA) 83504; August 22, 1983. Joseph F. Moore and Philip R. Linsley, for the petitioners. Harry M. Asch, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: In these consolidated cases, the Commissioner determined deficiencies of $35,150.51 and $28,622.37 for petitioners' 1977 and 1978 tax years, respectively. The Government has filed a Motion for Partial Summary Judgment, and after concessions the only issue remaining in dispute in respect of the Government's motion is whether petitioners may deduct in 1977 and 1978 certain amounts paid in those years pursuant to a "Mining Lease". For purposes of this motion the parties have agreed *277 to the facts (including exhibits), and solely for this purpose the Government has not challenged the substance of the transaction at issue. Petitioners, husband and wife, filed joint Federal income tax returns with the Cincinnati, Ohio, Service Center, and they resided at Carmel, Indiana, when their petitions were filed. For both years in question, petitioners elected the accrual method of accounting in respect of the activity at issue. Hereinafter, all references to "petitioner" in the singular will be to Ralph E. Walls. He is a dentist, and during the tax years was actively engaged in the practice of dentistry in Indiana. On December 8, 1977, petitioner entered into a "mining Lease" with Wyoming and Western Coal Reserves, Inc. (WW). [1] Under this "Mining Lease", which was actually a sublease, petitioner was entitled to mine all of the "economically recoverable" coal contained in and on 15 acres of land in Weld County, Colorado, for a period of 10 years plus the remainder of 1977. In exchange, petitioner was to pay WW a $1,000 "lease deposit", refundable upon termination, as well as royalties. In respect of the latter, the lease provided as follows: 6. Royalties. *278 The Lessee shall pay as rental for said coal and mining rights and privileges hereby leased, a royalty of the greater of (i) 15% of the net pit price plus $1.00 per ton of 2,000 pounds of run-of-mine merchantable coal hereby leased or (ii) $2.00 per net ton of run-of-mine merchantable coal hereby leased and which is sold from said premises; provided, however, that Lessee shall pay as rental for said mining rights and privileges hereby leased, a royalty of $1.50 per net ton of the initial 225,000 tons sold or mined, removed and marketed. (a) Lessee will pay Lessor a minimum annual royalty payment of $67,500. The minimum royalty payment herein provided for shall be recoupable at the rate of $1.50 per ton of coal sold or mined, removed and marketed. One fourth of the minimum annual royalty payment for the first lease year is payable at the inception of this lease. The balance is payable on or before December 31, 1977. The next nine minimum annual royalty payments are payable on or before December 31, of the following nine years. All royalty payments made to Lessor will have a cumulative effect with reference to the requirement of paying the minimum royalty payments. Therefore, *279 any royalty paid by Lessee will be applied towards the annual minimum payment requirement. Minimum royalties are nonrefundable. (b) In the event that the Lessee shall sell coal in place by way of a carved-out production payment or otherwise, Lessee will be obligated to pay Lessor a royalty payment to the same extent as if the coal had been mined, removed and marketed. Such royalties shall be due and payable within eighteen months of the date on which the contract creating the production payment is made. In an "Addendum to Mining Lease", also executed by petitioner and WW on the same day, December 8, 1977, it was stated that the minimum annual royalty payments due on December 31, 1979, and thereafter could be paid by "cash or note". The addendum set forth the required form for the note, which was (in part) as follows: The undersigned promises to pay WYOMING AND WESTERN COAL RESERVES, INC., SIXTY SEVEN THOUSANDS FIVE HUNDRED DOLLARS with interest *280 at 6% per annum from date hereof. This is a non-recourse note. Payments to be made to payee from all coal mined, in excess of the initial 90,000 tons, on the basis of $2.00 per ton of coal sold or mined, removed and marketed from the Leased Premises. The form note did not specify a time for payment. Petitioner paid one-quarter ($16,875) of the 1977 "minimum annual royalty payment" with his own check, and borrowed the remainder from Coal and Minerals Leasing and Development Corporation (CM). The note to CM was for $51,625 (presumably this included funds for the $1,000 "lease deposit") with 10-percent annual interest, and was due on December 31, 1997. By its terms, the note also covered any amounts loaned to Walls by CM in 1978. The note was nonrecourse, with payment to be made from petitioner's proceeds from the coal lease. Collateral for the loan was all coal leased to petitioner by WW in excess of 90,000 tons. Petitioner also entered into a "Contract for the Sale of Coal" with CM, under which he was to sell 90,000 tons of coal to CM at $2.50 per ton. This sale was said to constitute the creation of a "carved out production payment". Payment was to be made on December 31, 1987, although *281 CM could extend this payment date 10 years by undertaking to pay 10-percent annual interest on the "principal balance". Prior to the due date, payments of principal and interest were to be made exclusively from receipts of coal mined and marketed. The contract also stated: 3. As additional inducement for the Seller's [Walls'] entering into this contract, Buyer [CM] hereby agrees to lend Seller $51,625 to be repaid under the terms of the non-recourse promissory note attached hereto as Exhibit B, and further agrees to lend another $50,625 to Seller in 1978. 4. Buyer is entitled to the net proceeds from the initial 90,000 tons of coal mined from the Leased Premises. 5. Buyer agrees to commence mining as soon as practicable. Petitioner did borrow another $50,625 from CM in 1978, apparently to use toward the minimum royalty for that year. Furthermore, rather than paying his $16,875 cash portion of the 1978 royalty in a lump sum, he signed a note dated December 8, 1977, promising to pay WW that principal amount in 12 monthly installments of $1,481.04, with 10-percent annual interest on the unpaid principal from January 1, 1978. The first installment was due January 15, 1978, and *282 the last was due December 15, 1978. It appears that only nine installments were paid, totaling $13,329.36. This amount combined with the $50,625 borrowed from CM gives a total of $63,954.36, which was deducted by petitioner in 1978 as a $63,171.33 royalty and $783.03 as interest. No coal was mined in 1977 or 1978 on the property leased by petitioner. In respect of 1979, petitioner, in accordance with the addendum, elected to execute a nonrecourse promissory note instead of paying the "advance royalty" in cash. The parties agree that sufficient economically recoverable coal reserves were available to secure any nonrecourse notes executed pursuant to the addendum. On their 1977 Federal income tax return, petitioners claimed a deduction for royalties in respect of the WW lease of $67,500. On their 1978 return, the royalty deduction claimed was $63,171.33. In the notices of deficiency, the Commissioner disallowed these deductions in full, asserting inter alia that it had not been established that the royalties were "properly attributable to" the years in question. Rule 121(b), Tax Court Rules of Practice and Procedure, provides that a decision may be rendered upon motion *283 for summary judgment if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law", and that "partial summary adjudication may be made which does not dispose of all the issues in the case". Here, the parties have agreed that no material facts are in dispute, and since the Government accepts the form of the transaction at face value for purposes of its motion, we do the same. Jacklin v. Commissioner,79 T.C. 340, 345 (1982). Of course, "the factual materials presented and the inferences therefrom must be viewed in the light most favorable to the party opposing the motion". Jacklin v. Commissioner,supra, at 344. The Government, relying on section 1.612-3(b)(3), Income Tax Regs., contends that the royalties paid in 1977 and 1978 are not deductible in those years as a matter of law. That section states in relevant part: The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding *284 sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. [Emphasis added.] Thus, according to the Government, the advanced royalties *285 paid by petitioner in 1977 and 1978 are not deductible in those years because no coal was produced and the royalties were not paid as a result of a "minimum royalty provision". Before determining the correctness of this position, it will be useful to consider some background in respect to section 1.612-3(b)(3) of the Regulations. As originally promulgated in 1960, section 1.612-3(b)(3) allowed the payor of advanced royalties to deduct such royalties either (1) in the year paid or accrued, or (2) in the year the applicable mineral product was sold. However, this section was amended by T.D. 7523, which was published on December 19, 1977, but with an effective date of October 29, 1976 (the date that the Internal Revenue Service had first issued a News Release announcing that the regulation would be modified). This amended version of the regulation, which is set out above, essentially postpones the deduction until the mineral product is produced, regardless of when the advanced royalties are paid or accrued, unless the royalties are paid or accrued "as a result of a minimum royalty provision". If so, the taxpayer may, at his option, take the deduction in the year in *286 which the royalties are paid or accrued, subject of course to the provisions of Code sec. 446 as stated in sec. 1.612-3(b)(3) of the regulations. In general, a minimum royalty provision requires that a "substantially uniform amount of royalties" be paid at least annually over the term of the lease, in the absence of production requiring even greater royalties. Thus, if no mineral product is produced (mined) during a given year, no royalty deductions are allowed in that year unless royalties are paid or accrued as a result of a provision in the lease requiring that substantially uniform royalties be paid each year of the lease. In Wing v. Commissioner,81 T.C. 17 (1983), an accrual basis taxpayer entered into a 10-year sublease of certain Wyoming coal leases on October 8, 1977, obligating himself to pay an "advance minimum Annual Royalty of $60,000 ($6,000 for each of the first 10 years of the sublease)" (81 T.C. at 20 n. 4). However, the sublease provided that this royalty was to be paid (upon the execution of the agreement) in the form of $10,000 cash and a $50,000 nonrecourse note. The note bore interest of seven percent per year, and was to be *287 paid out of a charge of $ .50 for each ton of coal sold. Payments on the note were to apply first to interest and then to principal, and the note was secured by the coal subject to the sublease. The note, which was delivered on October 20, 1977, was due and payable on December 31, 1987. The Government argued in Wing that the provision at issue did not constitute a "minimum royalty provision" because, rather than requiring payment each year, it allowed the taxpayer to defer $50,000 of the royalty for some ten years by giving a note therefor. The taxpayer countered that since the note was collateralized by sufficient reserves it would be paid at some point -- either in cash or by the loss of the reserves upon foreclosure. In response to the taxpayer's contention, the Court stated (81 T.C. at 40-41): [T]his argument misses the mark. To qualify for the deduction, the petitioner must meet the terms of the regulation, which sets out that a minimum royalty provision must require payment at least annually. That the note may in fact be paid at some later date is not sufficient to establish the existence of such a requirement. (Footnote omitted.) We think that *288 this explication of section 1.612-3(b)(3) of the Regulations governs the instant case. The addendum to the lease permitted all payments after 1978 to be made by means of nonrecourse notes with no specified due dates, with payment required only when coal was produced. Thus, regardless of the likelihood of eventual satisfaction of the notes, the lease addendum allowed deferral of the post-1978 payments such that payment was not required to be made at least annually, and it therefore was not a "minimum royalty provision". Petitioner raises a number of arguments in respect of the validity of all or a portion of the amended version of section 1.612-3(b)(3). However, all of these arguments were considered and rejected in Wing v. Commissioner,supra,81 T.C. at 26-35, and Wendland v. Commissioner,79 T.C. 355, 379-385 (1982), and we will not reconsider them here. [2]
*289 We have concluded that the royalties paid by petitioner in 1977 and 1978 were not paid "as a result of a minimum royalty provision". Therefore, the royalties are not deductible until the year in which coal is produced. Since the parties agree that no coal was produced in 1977 or 1978, the Government is entitled to prevail on this issue as a matter of law. Accordingly, The Motion for Partial Summary Judgment will be granted.
Footnotes
1. Petitioner also executed a slightly altered version of this "Mining Lease" on December 30, 1977, but this circumstance does not appear to be of any consequence to the issue presented by the motion for partial summary judgment.↩
2. Petitioner focuses in particular on the alleged invalidity of the second sentence of sec. 1.612-3(b)(3), Income Tax Regs., which provides that mineral sold before production is considered to be sold when the mineral is first produced, because in the absence of this provision the "carved out production payment" sold to CM in 1977 might be sufficient to render the 1977 and 1978 royalty payments deductible in the years paid. Petitioner asserts that this sentence should be held invalid even if the remainder of the amended regulation is valid, because the sentence in question was not in the proposed amendment but rather was inserted in the final regulation without opportunity for comment. However, in Wing v. Commissioner,81 T.C. 17, 35 (1983): The only arguably substantial change regarding petitioner would be the second sentence of the regulation. We think that sentence is sufficiently related to the first sentence as to be merely explanatory in nature. Such a minor change therefore did not require a second round of comment before the regulation could be properly adopted.↩