NORMAN J. and ANNIE G. FREDKIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fredkin v. Commissioner
Docket No. 9187-81.
United States Tax Court
T.C. Memo 1986-154; 1986 Tax Ct. Memo LEXIS 454; 51 T.C.M. (CCH) 865; T.C.M. (RIA) 86154; April 17, 1986. Shlomo Aaron Beilis and Donald Jay Pols, for the petitioners. John F. O'Brien and Robert B. Dugan, for the respondent. CLAPP
MEMORANDUM OPINION CLAPP, Judge: In a notice of deficiency, dated March 20, 1981, respondent determined deficiencies in petitioners' Federal income tax of $19,336 for 1977 and $15,881 for 1978. This case is before the Court on respondent's motion for partial summary judgment filed pursuant to Rule 121, Tax Court Rules of Practice and Procedure. The issue raised is whether petitioners may deduct claimed losses for the taxable years in issue to the extent they resulted from alleged advanced minimum royalty payments. Petitioners resided in Massachusetts at the time their petition was filed in this case. The pleadings, affidavits and exhibits attached thereto contain *455 the facts used for the purpose of ruling on the motions. The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. Jacklin v. Commissioner,79 T.C. 340, 344 (1982). [1]
Imperial Finance NV is a corporation formed in Netherlands Antilles which operated in Grand Cayman in the British West Indies. Imperial Finance acquired an option to lease the mineral and mining rights on certain land in South West Africa. These rights were divided into one thousand "working interests" which were sublet to investors in full or fractional units. According to the sublease agreement, each working interest entitled the investor to mine and remove diamonds in return for a minimum annual royalty payment. Paragraph three of the 1977 sublease agreement provided as follows: 3. Term. Unless sooner terminated in the manner herein provided, the term hereof shall be for a period of five (5) years commencing on December 28, 1977, and *456 terminating on December 27, 1982, and subject to the terms hereof, including, but not limited to, the Participant fulfilling all of Participant's obligations hereunder, may be automatically extended from year to year upon the Participant continuing to make payment of the Minimum Annual Royalty (as hereinafter defined) when due until all of the mineable and merchantable diamonds have been mined and removed from the granted Property. * * * The 1978 sublease called for a four-year term with the same provisions for extension. The 1977 sublease agreement [2] contains the following provision with respect to the minimum annual royalty: 4. Minimum Annual Royalty. (a) Participant agrees to pay to Lessor a minimum annual royalty (the "Minimum Annual Royalty") of $150,000 per Lease Year regardless of the amount of diamonds, if any, which may actually be mined, removed or sold from the Property during such Lease Year. * * * (b) The Minimum Annual Royalties for the Lease Years ending on December 27, 1978, and thereafter are payable on or before the September 30th immediately preceding the commencement of each such Lease Year unless prior to June 30th immediately preceding the applicable *457 September 30th of each Lease Year, the Participant notifies the Lessor that Participant does not intend to make such payment, in which event there will be a complete termination of all of Participant's rights hereunder except as hereinafter provided. Notwithstanding anything herein contained to the contrary, Lessor shall not exercise its right of foreclosure hereunder unless and until it has notified Participant and any assignee by 30-day written notice of Participant's failure to comply with the provisions hereof. Such notice shall state that Participant's failure to advise Lessor within 30 days of the date of such notice of Participant's intention not to continue to make the Minimum Annual Royalty Payment and Participant's further failure to make such payment shall result in Participant's total forfeiture of all rights granted hereunder. (c) References throughout this agreement to carats shall be to carats as they are minded-raw, rough and untreated. (d) For purposes of this Agreement, the following terms shall have the following meanings: (1) The term "Minimum Yearly Carats" shall mean the first 1,200 carats which may be mined on behalf of Participant in each Lease Year. *458 (2) The term "Deficiency" shall mean the extent to which the number of carats mined on behalf of Participant in any Lease Year is less than the Minimum Yearly Carats. (e) The Minimum Annual Royalties shall be subject to recoupment at the rate of $125 per carat on the Minimum Yearly Carats which are mined by or on behalf of Participant. (f) In the event that a Participant subscribes for less than one undivided Working Interest, the term hereof shall be the same, but the Participant's right to withdraw from payment and further participation hereunder shall not commence until such time as the amount of cash paid by him as Minimum Annual Royalty Payments hereunder equals or exceeds $150,000. The provisions dealing with remedies and forfeiture state in pertinent part as follows: 11. Remedies/Forfeiture. * * * (b) Notwithstanding anything to the contrary contained herein, in the event Participant or any assignee has given notice of intent not to make payment of the Minimum Annual Royalty as provided *459 in paragraph 4(b) hereof, then Participant shall not be liable therefor or for any future Minimum Annual Royalty, this Agreement shall terminate, and Participant will have no further rights hereunder except with respect to the cumulative Deficiency. Participant will be entitled to receive the cumulative Deficiency at such time that the Contract Miner (or its successor) mines such amount of carats for Participant under the Mining Agreement. (c) Notwithstanding any other provisions of this Agreement, if Participant or any assignee fails to give the notice of intent stated in paragraph 4 (b) hereof, and fails to pay the Minimum Annual Royalty as provided in paragraphs 4 (a) and (b) hereof, then he shall suffer an absolute loss of any and all rights granted to Participant hereunder including but not limited to the aforementioned cumulative Deficiency, and neither party shall thereafter have any claim against the other. In 1977 petitioner Norman Fredkin (hereinafter petitioner in the singular) acquired a one-third fractional interest and paid $50,000 as an advance royalty payment. He paid $10,000 directly and the remaining $40,000 was paid by First Fidelity Bonding Co., Ltd. an unrelated *460 party, pursuant to a nonrecourse obligation executed by petitioner. Petitioner did not elect to terminate his sublease at the end of the first year. Petitioner paid $50,000 in 1978 in the same manner. The loan referred to above was evidenced by a promissory note and a lending agreement. The lending agreement provided that the lender would, in addition to the 80 percent royalty paid in the first year, lend to the investor up to 80 percent of the royalty due in succeeding years to the extent that the diamonds recovered for the investor did not generate funds sufficient to cover the succeeding years' royalties and that the investor was not in default under the sublease. Interest was to accrue at the rate of ten percent per annum. The lending agreement provided that the principal of the loan was payable solely from the investor's share of proceeds of sales of diamonds. The promissory note permitted certain penalties attributable to the contract miner to be applied to the interest on the note. The note stated that in the event any principal remained unpaid at the expiration of fifteen years from the date of the note, the remaining balance would be due and payable. The note further *461 stated in accordance with the lending agreement that the investor assigned to the lender as collateral all of the investor's rights under the investor's agreement with Imperial Finance, N.V. (the lessor), Universal Diamond Mining, N.V. (the contract miner) and Transworld Investors, Ltd. (the diamond sales company). Except for the aforementioned collateral, the lender was to be without recourse against the investor. No diamonds were mined or sold in either 1977 or 1978. For each of the years 1977 and 1978, petitioners claimed on the Schedule C attached to their return a $50,170 loss of which $50,000 represented payment of the alleged minimum annual royalty. In the notice of deficiency, respondent disallowed all the losses claimed with respect to the diamond mining venture. For purposes of this motion for partial summary judgment, we are concerned solely with the deduction for minimum annual royalties. Rule 121(b) provides that a decision shall be rendered upon motion for summary judgment if it is shown that "there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." It further provides that "partial summary adjudication may be *462 made which does not dispose of all the issues in the case." Respondent contends that the alleged royalty payments are not deductibel because they do not qualify as a minimum royalty as defined under section 1.612-3(b)(3), Income Tax Regs. In the alternative, respondent argues that at least eighty percent of the claimed royalty payments should be disallowed because the non-cash payments made by petitioner in the form of a nonrecourse note should be disregarded as a matter of law. The nonrecourse obligation, the payment of which was completely contingent upon the happening of future speculative events, should not be treated as bona fide debt for tax purposes. Petitioners contend that the royalty payments were paid pursuant to a minimum annual royalty provision. In the alternative, petitioners contend that the payments are deductibel as rent or delay rentals. The initial issue presented is whether petitioners' royalty payments were paid pursuant to a minimum royalty provision as defined in section 1.612-3(b)(3), Income Tax Regs. This issue has been dealt with in Cheng v. Commissioner,T.C. Memo. 1986-153 filed on this date, to which reference is made. Initially, *463 petitioners herein argued that the term of the lease was unclear. On the one hand, paragraph three provided that it was a five year lease with the option to renew on a year-to-year basis. On the other hand, the parties might have intended a year-to-year lease renewable by payment of a minimum annual royalty. Petitioners in their reply brief, however, claim that the lease is for at least a five year term and because of the option to renew is of unlimited duration. Petitioners then state that the annually recurring payments are required for the entire lease term. Petitioners claim that the obligation to make these payments is not illusory relying on United States v. Swank,451 U.S. 571 (1981), which held that a lessee had an economic interest in minerals in place despite a provision in the lease allowing either party (or the lessor alone) to terminate the lease with 30 days notice. Petitioners argue that the same reasoning should apply to a royalty deduction. We believe that United States v. Swank,supra, has no applicability to the case at bar inasmuch as it involves a question of economic interest and the percentage depletion deduction. *464 The Court reasoned that there was no rational basis for linking such a deduction to any particular length of time. The allowability of the advance royalty deduction pursuant to a minimum royalty provision where there is no production is, however, linked to a period of time, i.e. the payments must be made over the life of the lease or for a period of at least 20 years. Based on the foregoing, we conclude that because there is no enforceable requirement that annual payments be made over the life of the lease, the lease does not satisfy the minimum annual royalty provision requirement. Therefore, petitioner is not entitled to deduct the royalties. Petitioners argue, in the alternative, that if the payments are not royalties then they should be considered as rent or delay rentals. Petitioners argue that under South West African law Nambia Diamond Mining Company from whom Imperial Finance acquired the option possessed only a prospecting grant not a mining grant. Such prospecting grant cannot be leased without approval from the government. Therefore, petitioners could not have acquired an economic interest but only a contract right. We agree with respondent that there is no basis *465 to the claim that these payments are rent or delay rentals. The sublease agreement which is entitled "Sublease Agreement for Diamond Mining Purposes" specifically confers the rights to mine and remove diamonds. The agreement only refers to royalties--it does not intimate in any way that a tenant relationship is intended. The payments at issue here were made pursuant to paragraph four of the sublease which only refers to royalties. If in fact the lessor did not possess the right to mine and could not lease out any rights it did have, it does not follow that the investors are, therefore, entitled to a tax deduction. Rather, it undermines the entire agreement upon which the deductions at issue are based. Accordingly, respondent's motion for partial summary judgment is granted. An appropriate order will be issued.
Footnotes
1. With the exception of the amounts invested, the factual pattern in this case is identical to that in Cheng v. Commissioner,T.C. Memo. 1986-153↩, filed on this date.
2. The 1978 sublease agreement contains substantially identical provisions except the date given in paragraph 4(b) is December 31, 1978 (sic?) instead of December 27, 1978.↩