HARRY L. CLARK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93060. Filed April 16, 1963

Harry L. Clark, pro se.
*Sanford S. Neuman,* for the respondent.

PIERCE, *Judge:* Respondent determined deficiencies in the income taxes of the petitioner for the calendar years 1958 and 1959 in the respective amounts of $548.46 and $517.44.

The sole issue for decision is whether petitioner is entitled to deduct as alimony, the amounts of $2,600 and $2,700, which he paid to his wife from whom he was separated during the years 1958 and 1959, respectively.

### FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts, together with the exhibits therein identified, is incorporated herein by reference.

The petitioner, Harry L. Clark, resides in West Roxbury, Mass. He filed an individual Federal income tax return for each of the calendar years involved, with the district director of internal revenue at Boston.

Petitioner and Marion A. Clark were married in 1922 or 1923. They had nine children, of whom three were minors in the taxable years here involved. In the fall of 1952, the marriage tribunal of the Roman Catholic Archdiocese of Boston made a decree that the petitioner and Marion might thereafter live separate and apart, and that the petitioner should furnish the support of Marion and their minor children. The record herein does not contain a copy of the decree. Petitioner and Marion have lived separate and apart since January 1953. Neither petitioner nor his wife has ever obtained either a decree of separation or a decree of divorce from a civil court.

At some date not shown by the record, petitioner and Marion orally agreed that he would remit to her, for her support, $100 every 2 weeks, at the times when he received his paycheck. No written agreement to make said payments, or in any other way setting forth the terms of their separation, has ever been entered into between them.

Pursuant to the above-mentioned oral agreement, petitioner paid Marion $2,600 in 1958 and $2,700 in 1959. He made said payments

by means of personal money orders which he purchased from various banks and savings and loan associations in Boston. Said money orders bore on their face no indication of the purpose for which petitioner purchased them or of the purpose for which he sent them to his wife.

Petitioner deducted $2,600 on his 1958 return and $2,700 on his 1959 return as alimony.

Respondent, on audit of petitioner's returns, determined that said claimed deductions for alimony were not allowable.

OPINION

Sections 71(a)(2) and 215 of the 1954 code are here controlling. They provide so far as here relevant as follows:

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(2) WRITTEN SEPARATION AGREEMENT.—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship * * *

SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

The plain words of the statute (sec. 71(a)(2)) require that there be a "written separation agreement executed after the date of the enactment of this title [Aug. 16, 1954]," as a condition precedent to deduction by the petitioner of the support payments which he made to Marion, his wife, from whom he is separated, by mutual consent and with the approval of the religious authorities of his church. There was not, during the taxable years involved, or at any other time so far as the record shows, any such written agreement between petitioner and Marion. Petitioner's argument that his signature on the money orders sent to Marion and her endorsement thereof, somehow suffice to constitute a written separation agreement must be rejected as being wholly without merit. Those instruments do not even contain an indication of the purposes for which they were drawn, much less the terms of a separation agreement. In Rev. Rul. 59–397, 1959–2 C.B. 32, the question was presented whether the correspondence between attorneys representing a husband and wife, which  referred to an oral agreement wherein the husband agreed to pay his wife certain sums for her support but which did not contain any agreement by the parties that they would separate or live apart,

constituted a "written separation agreement" within the meaning of section 71(a)(2). The Internal Revenue Service ruled that it did not. The facts there are much stronger for the taxpayer than are the facts in the instant case.

Nor can the decree of the marriage tribunal of the archdiocese of Boston avail petitioner. That decree may or may not have been in writing; it may or may not have spelled out the terms of the separation. In any event, such a decree would hardly seem to constitute an "agreement"; and, moreover, it was handed down in November 1952, long before August 16, 1954.

Petitioner places reliance upon section 71(a)(3), which provides in here relevant part:

> (3) DECREE FOR SUPPORT.—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. * * *

The foregoing provision was added to the bill that became the 1954 Code by the Senate Finance Committee, which in its report therein used the term "court decree." (S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 11, 171.) It is our opinion that the "decree" contemplated by the statute is one by a court of civil jurisdiction, and not one by an ecclesiastical court, such as the marriage tribunal of the archdiocese of Boston. Further, that tribunal's decree was entered in November 1952, almost a year and a half prior to March 1, 1954. Hence, section 71(a)(3) furnishes no warrant for the deductions here involved.

The result herein may seem somewhat harsh, for we are fully satisfied that petitioner's payments to Marion fall within the spirit of section 71(a)(2). Nevertheless, Congress has prescribed the conditions under which the deduction for such payments is to be allowed, and one of those conditions is that there be a written separation agreement. We pointed out in the recent case of *John W. Furrow, Jr.*, 34 T.C. 931, affd. 292 F. 2d 604 (C.A. 10), that:

> In order for the payments to come within the provisions of section 71(a)(2) of the Code of 1954, there must, among other requirements, have been "a written separation agreement executed after the date of the enactment [August 16, 1954] of this title," Subtitle A—Income Taxes, the payments must have been "received after such agreement is executed," and must have been "made under such agreement." [Bracketed material in original.]

See also Income Tax Regs., sec. 1.71(b)(2)(i).

It is a familiar principle that deductions are a matter of legislative grace and that a taxpayer seeking a deduction must bring himself squarely within the terms of the statute granting it. *New Colonial Co. v. Helvering*, 292 U.S. 435. This the petitioner has failed to do. Wherefore we must hold that since the payments here involved would

not be includable in petitioner's wife's income under any of the provisions of section 71, said payments are not deductible by him under section 215(a).

Respondent stated in his statutory notice of deficiency that, if petitioner were held not entitled to the alimony deductions claimed, he would be entitled to an exemption deduction for Marion in 1959 under section 151(b). The deficiency determined for 1959 accordingly will be recomputed to allow petitioner said exemption deduction.

*Decision will be entered under Rule 50.*