HOWARD BOGARD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

BRIDGET BOGARD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4510–69, 6970–70, 7772–70, 7032–70. Filed October 16, 1972.

*Lawson F. Bernstein* and *Harold B. Obstfeld*, for the petitioner in docket Nos. 4510–69 and 6970–70.

*Leonard Bailin*, for the petitioner in docket Nos. 7772–70 and 7032–70.

*Harvey R. Poe*, for the respondent.

STERRETT, *Judge:* The Commissioner determined a deficiency in the petitioners' Federal income taxes as follows:

| Taxpayer | Taxable year | Amount |
|---|---|---|
| Howard Bogard | 1966 | $2, 355. 83 |
| Do | 1967 | 2, 744. 04 |
| Bridget Bogard | 1966 | 1, 580. 63 |
| Do | 1967 | 1, 102. 91 |

Concessions having been made, the sole issue for our determination is whether petitioner Bridget Bogard must include in her gross income $6,387.50 for 1966 and $3,833.05 for 1967 as periodic payments within the purview of section 71(a)(2), I.R.C. 1954,[1] thereby making payments of $6,575.50 [2] for 1966 and $3,833.05 for 1967 deductible by petitioner Howard Bogard under the provisions of section 215(a). To resolve this question we must determine whether the payments were received pursuant to a "written separation agreement" within the meaning of section 71(a)(2).

### FINDINGS OF FACT

These cases have been consolidated for trial, briefing, and opinion. Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

The petitioner in docket Nos. 4510–69 and 6970–70 is Howard Bogard (hereinafter referred to as Howard), residing at the time of the filing of his petition herein at New York, N.Y. The petitioner in docket Nos. 7772–70 and 7032–70 is Bridget Bogard (hereinafter referred to as Bridget), residing at the time of the filing of her petition herein at New York, N.Y. Both petitioners filed their individual income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue at New York N.Y.

Howard and Bridget were wed on March 8, 1951. David, the petitioners' only child, was born on May 6, 1955. Starting in the early 1960's the marriage was beset with problems. In 1963, Howard left home for a short period of time, returning about 5 days later.

During June 1965, the petitioners discussed separation and dissolution of their marriage. Because David was to be at camp in July and

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

[2] The discrepancy between the amount potentially deductible by petitioner Howard Bogard and potentially includable by Bridget Bogard is due to Howard's substantiation at trial of an amount larger than the respondent indicated in his notice of deficiency to Bridget Bogard.

thereafter on a vacation in Europe with Bridget, petitioners decided to wait until July before separating. In this manner it was felt David's summer vacation would not be adversely affected.

Howard began staying at his professional office in the early part of July. On July 29, 1965, the petitioners composed and signed the following agreement:

*July 29, 1965*

Until we see a lawyer, following is our agreement:

(1) As agreed, you will give me $630 per month which will cover rent, food and general living expenses and psychiatric treatment (50 per week) which will be discontinued when treatment stops.* Should rent increase you will increase monthly allotments accordingly.

(2) You will increase our life insurance by $25,000 with me as principal beneficiary.

(3) You will keep car, piano and your books, I will keep money in the bank.

(4) You are responsible for medical and dental expenses for David and me.

(5) You will pay for David's Summer Camp.

(6) You agreed to give me additional money when you have it for clothing and will be responsible for David's clothing.

Signed: HOWARD M. BOGARD

Signed: BRIDGET BOGARD

BB* at termination of psychiatric treatment monthly payments will be decreased to $478—$520—a month which will include rent, living expenses, telephone, & clothing for Bridget. HB.

Howard and Bridget were separated at least as of July 29, 1965, and have not lived as man and wife since that time.

The petitioners filed a joint Federal income tax return for 1965. Pursuant to the above-mentioned agreement, Howard made payments of $6,575.50 in 1966 and $3,833.05 in 1967 to Bridget, which he deducted on his individual income tax returns for 1966 and 1967. Bridget did not include these payments in her gross income for 1966 or 1967.

A formal separation agreement and property settlement was executed on August 23, 1967. The terms of this agreement were substantially different from the terms of the petitioners' first agreement. Furthermore this instrument contained a provision affirming the parties' intention to live separately. Shortly thereafter, on August 29, 1967, Howard and Bridget were divorced with the decree incorporating the terms of petitioners' agreement of August 23, 1967. The treatment for Federal tax purposes of payments made under the provisions of the second agreement is not in dispute in the present case.

OPINION

After marital discord Bridget and Howard executed a written agreement providing, among other things, support and maintenance

for Bridget. Although a reference to their separation was absent from the instrument, in fact they were separated continually, at least from the time of the execution of said agreement until formally divorced 2 years later. Bridget excluded all the payments received from Howard from her gross income for 1966 and 1967. Antithetically, Howard deducted the payments for both 1966 and 1967. In the notices of deficiency sent to each petitioner, respondent maintained inconsistent positions to protect his rights. On brief however, respondent favors the position maintained by Bridget.

The only issue for adjudication is whether payments made by Howard in 1966 and 1967 to his wife Bridget pursuant to their written agreement should be included in her gross income under section 71(a)(2), and consequently allowed as a deduction to Howard under the provisions of section 215(a). To settle this question, we must determine whether the written instrument drawn by the petitioners constituted a "written separation agreement" within the meaning of section 71(a)(2). Section 71(a)(2) provides:

(2) WRITTEN SEPARATION AGREEMENT.—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

Howard and Bridget were separated throughout the years in question: there was a written agreement; the payments made by Howard to Bridget were periodic and were made because of their marital relationship. The parties did not file joint returns during 1966 and 1967. Bridget and respondent argue that in order to qualify under section 71(a)(2), it is required that the qualifying "written separation agreement" contain a provision for support and a provision reciting the parties' intention to remain separate and apart. Howard disputes the last part of respondent's contention, arguing that an express provision for separation is not necessary when separation exists as a fact.

The phrase "written separation agreement" is without definition in the Internal Revenue Code or regulations, nor have we been able to locate any cases which construe the phrase. We do not find our decision in *Harry L. Clark*, 40 T.C. 57 (1963), cited by the parties, to be of help on this point.

The petitioners indicated on brief that State law might be controlling on this issue. The Senate report on section 71(a)(2) states, "The periodic payments received under such agreement are includible in the wife's gross income whether or not the agreement is an instrument

enforceable in a court of law." S. Rept. No. 1622, 83d Cong., 2d Sess., p. 171 (1954). Section 1.71–1(b)(2)(i), Income Tax Regs., reiterates this statement [3] and leads us to the conclusion that, in striving for uniformity in application, State law is not controlling in the determination of what constitutes a written separation agreement.

Section 71 was enacted to treat payments of support as income to the spouse receiving them and relieve the other spouse from the burden of being taxed on such payments by making them deductible to him. H. Rept. No. 2333, 77th Cong., 2d Sess., 1942–2 C.B. 427; S. Rept. No. 1631, 77th Cong., 2d Sess., 1942–2 C.B. 568. Section 71(a)(2) extended this benefit to periodic payments made by a husband to his wife under a written separation agreement, though not separated by court decree, as long as a joint return is not filed. H. Rept. No. 1337, 83d Cong., 2d Sess., p. 9 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., p. 10 (1954).

Logically, it appears Congress was interested in a clear statement in written form of the terms of support where the parties are separated. In this manner it is administratively convenient for the Commissioner to apprise himself of the amount of gross income to the wife and the corresponding deduction allowable to the husband. Since the statute requires an actual separation, formal expression of this in the separation agreement is supererogatory. To insist that the parties confirm in writing the demonstrable fact of their continuous separation is to elevate form over substance by concentrating on a tree to the exclusion of the forest. What matters is that the parties executed a written agreement in contemplation of a separation status which status in fact continued to exist throughout the years in question. Moreover, the "boilerplate" requirement advocated by the respondent and Bridget seems unduly harsh and unreasonable, especially where the parties are often unfamiliar with legal intricacies as in the present case. A principal result would be to snare the unwary or uninformed.

Admittedly an express recital that the parties will live apart is frequently contained in separation agreements. Nevertheless it is generally accepted that the validity of separation agreements depends upon the separation as a fact, not upon its recital in the agreement. 1 Lindey, Separation Agreements and Ante-Nuptial Contracts, sec. 4.4, p. 4–10; 42 C.J.S., Husband and Wife, sec. 596, p. 175; *Stahl* v. *Stahl*, 221 N.Y.S. 2d 931 (1961), modified 16 App. Div. 2d 467, 228 N.Y.S. 2d 724 (1962); *McGean* v. *Parsons*, 150 App. Div. 208, 134 N.Y. Supp. 649 (1912).

In the instant case, Howard made payments to Bridget according

---

[3] Sec. 1.71–1(b)(2). *Written Separation Agreement.* (i) * * * Such payments are includible in the wife's gross income whether or not the agreement is a legally enforceable instrument. * * *

to the terms of their written agreement. The agreement was written in light of their separation, and they steadfastly remained apart during the years in issue. Therefore we hold that the amounts received by Bridget pursuant to the agreement constitute gross income to her and are deductible by Howard in determining his taxable income.

We note in passing Rev. Rul. 59–397, 1959–2 C.B. 32, which poses a situation where correspondence between attorneys representing a husband and wife referred to an oral agreement of support between the spouses. In holding that the correspondence was not a written separation agreement the ruling states:

> In the instant case, although the correspondence between the attorneys representing the husband and the wife refers to the oral agreement in which the husband agreed to pay to his wife a stipulated sum for her support, the correspondence does not contain any agreement by the parties that they will separate or live apart. The exchange of correspondence merely acknowledges the fact that an oral agreement existed between the husband and wife for payments for her support.
>
> Accordingly, it is held that the correspondence between the attorneys representing the husband and wife does not constitute a written separation agreement within the meaning of section 71(a)(2) of the Code, where such correspondence refers to an oral agreement for her support but does not contain any agreement by the parties that they will separate or live apart. Payments made by the husband to his wife under such agreement are not includible in the wife's gross income under section 71 of the Code and, therefore, are not deductible by the husband under section 215 of the Code.

To the extent that this ruling may indicate that a written separation agreement within the meaning of section 71(a)(2) must contain an agreement that the parties will separate or live apart, we feel it is erroneous. As we see it, section 71(a) requires only a written agreement of support in respect of an actual separation, which may be shown by extrinsic evidence. To hold otherwise would dampen the intentions of Congress, and place an undue burden upon taxpayers.

*Decisions will be entered under Rule 50 in docket Nos. 4510–69, 6970–70, and 7772–70.*

*Decision will be entered for the respondent in docket No. 7032–70.*