JUDITH A. AZENARO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent
Azenaro v. Commissioner
Docket No. 4778-88.
United States Tax Court
T.C. Memo 1989-224; 1989 Tax Ct. Memo LEXIS 224; 57 T.C.M. (CCH) 355; T.C.M. (RIA) 89224; May 10, 1989; As corrected May 16, 1989 Jeremiah W. Doyle, for the petitioner. Cheryl A. McInroy, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the years 1983 and 1984 in the amounts of $ 892 and $ 968, respectively. The sole issue for decision is whether a letter from petitioner's former husband's attorney and signed by her constitutes a written separation agreement within the meaning of section 71(a)(2). [1]
All of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner resided in Newburyport, Massachusetts, at the time of the filing of her petition. Petitioner and her former husband, Jeremiah E. Azenaro, separated in 1982. Approximately one year after the separation, *226 Mr. Azenaro contacted Harvey Beit, an attorney, for advice concerning his obligation to support petitioner and his two minor children. On March 2, 1983, Mr. Azenaro, through his attorney, sent a proposal, in the form of letter signed by the attorney, to petitioner in which, among other things, he offered to pay her a monthly sum of $ 1,344.35, of which $ 800.00 was designated as child support. The letter concluded by stating: "In the event that you accept this proposal, would you kindly endorse the copy of this letter where the assent is provided and return the copy to me in the return envelope. Otherwise, I shall be pleased to meet with you or your counsel upon your request." The assent portion was as follows: ASSENT
I, Judith Azenaro, hereby agree and assent to the terms of the above letter, the original of which I have retained for my records. Date: 3-4-83 /s/Judith Azenaro
Judith Azenaro The written proposal was not personally signed by petitioner's husband. The agreement went into effect on March 11, 1983. Petitioner and Mr. Azenaro were divorced in November 1987. An agreement between them, which was incorporated into the judgment of divorce, provided *227 that there would be no alimony. Mr. Azenaro sent monthly checks to petitioner totalling $ 13,460 in 1984 and $ 14,657 in 1983. Respondent determined that $ 5,450 and $ 5,680 of the foregoing amounts constituted alimony. [2]
Respondent's position is that the March 2, 1983, letter is a written separation agreement within the meaning of section 71(a)(2). [3] Petitioner asserts that the letter does not constitute such a written separation agreement. We agree with respondent. *228 The phrase "written separation agreement" is without definition in the Code, the regulations, or the legislative history. Bogard v. Commissioner,59 T.C. 97, 100 (1972). In striving for uniformity in application, State law is not controlling in the determination of what constitutes a written separation agreement. Bogard v. Commissioner, supra at 101. Payments received pursuant to a written separation agreement are includable in the wife's gross income whether or not the agreement is a legally enforceable instrument. Sec. 1.71-1 (b)(2)(i), Income Tax Regs. However, the agreement must be a clear statement in written form of the terms of the support. Bogard v. Commissioner, supra at 101. We have previously held that letters, which do not represent a meeting of the minds of the parties, do not constitute a written separation agreement within the meaning of section 71(a)(2). See Grant v. Commissioner,84 T.C. 809 (1985), affd. without published opinion 800 F.2d 260 (4th Cir. 1986); *229 Estate of Hill v. Commissioner,59 T.C. 846 (1973). [4] These cases are distinguishable from the present case in that here there is a clear agreement reached by Mr. Azenaro and petitioner as to the specific terms of support. Mr. Azenaro offered petitioner, through his attorney, monthly support payments of $ 1,344.35. [5] Petitioner agreed to this proposal by signing the assent portion. Petitioner argues that the letter does not constitute a valid written separation agreement but merely represents an offer to negotiate. In support of her position, *230 petitioner relies upon the following facts: that the letter specifically allowed for modification of support payments in the event of a change in Mr. Azenaro's financial condition; that the letter does not provide a formula or settled method for the adjustment of payments or allocation of any such adjusted payment between alimony and child support; that the letter requested that petitioner discuss child visitation terms; that the sending of a copy of the letter to Mr. Azenaro indicates that he never reviewed or assented to its contents prior to its being sent to petitioner; that the letter was not signed by Mr. Azenaro; and that the subsequent separation agreement executed by the parties specifically waived alimony. Each of these assertions is without merit. First, the terms of support are specific and embody the agreement of petitioner and her husband. The mere fact that the letter indicates that the support obligations would be adjusted for any salary change does not negate this conclusion. See Jacklin v. Commissioner,79 T.C. 340, 351 (1982). Such a provision for unforeseen contingencies is often found in support agreements. Also, the letter specifically designates *231 what portion is attributable to child support and, thus, arithmetically earmarks the amount for petitioner's support. The fact that the letter indicates a need to define the terms of child visitation does not lead to a conclusion that there was no meeting of the parties' minds as to the terms of support. A review of the letter shows that the terms of the proposal are Mr. Azenaro's and not those of his attorney. [6] This conclusion is not affected by any possibility that Mr. Azenaro might not have reviewed the actual letter before it was sent to petitioner, especially in light of the fact that Mr. Azenaro carried out the terms of his proposal. *232 Petitioner asserts that the letter does not constitute a written separation agreement because it is not signed by Mr. Azenaro. Both the Code and the regulations refer to written separation agreements that have been "executed." However, neither the Code nor the regulations specifically require that the written separation agreement actually be signed by the husband and wife. We do not share petitioner's view of the significance of the word "executed." The first time the word is used in section 71(a)(2) is in conjunction with the phrase "after the enactment of this title," see n. 3, supra, and the legislative history makes clear that the purpose of the provision was to make certain that then-existing arrangements would not be upset. S. Rept. No. 1622, 83d Cong. 2d Sess., p. 10 (1954). In this context, we think no further significance should be accorded the subsequent use of the word "executed" in this section beyond reflecting the normal requirements of the existence of a "written separation agreement." Nor do we perceive any basis for precluding an attorney from signing a separation agreement on behalf of his client. In the numerous cases dealing with actions by attorneys *233 in the alimony arena, there is not the slightest suggestion that an attorney may not as a matter of law be authorized, even orally, [7] to take such action. Nor is there any basis on the record herein for concluding that Mr. Beit was not so authorized by Mr. Azenaro at the time he sent the March 2, 1983, letter. The parties have stipulated that "Mr. Azenaro, through his attorney, Mr. Beit, sent a proposal to petitioner in which, inter alia, he offered to pay petitioner a monthly sum of $ 1,344.35." Lastly, the subsequent waiver of alimony does not influence our conclusion that, in March of 1983, there was a valid written separation agreement that was specific as to the terms of support and that represented an agreement between petitioner and Mr. Azenaro. The provisions of the agreement entered into at the time of the divorce more than *234 4 years later could well have been dictated by intervening changes in circumstances as to which the record herein is totally devoid of evidence. [8]
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. There is no dispute between the parties as to the correctness of these amounts.↩
3. Section 71(a)(2) as in effect during the taxable years at issue provided as follows: (2) Written Separation Agreement. -- If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.↩
4. See also Harlow v. Commissioner,T.C. Memo. 1984-393; Saniewski v. Commissioner,T.C. Memo. 1979-337; Greenfield v. Commissioner,T.C. Memo. 1978-386; Auerbach v. Commissioner,T.C. Memo. 1975-219↩. 5. More specifically, the letter states: Jerry will pay directly to you the sum of One Thousand Three Hundred Forty-Five ($ 1,345) Dollars monthly which is to satisfy the following factors: ↩
$ 800.00 monthly for child support
400.00 for spousal rent
40.00 telephone
50.00 propane
12.35 cable t.v.
42.00 electricity 6. In the letter, Mr. Beit writes: We [Messrs. Beit and Azenaro] have carefully reviewed Jerry's legal and ethical obligations with respect to you and his minor two (2) children and accordingly offer you the following financial program. * * * I have counseled Jerry that in the event you and Jerry were unable to appropriately and effectively negotiate this matter on a voluntary basis that our court system would not require him to contribute One Thousand Three Hundred Forty-Four Dollars Thirty-Five Cents ($ 1,344.35) in a separation situation. However, he adopted the position that apart from any court analysis or requirement that he felt he was capable of doing this and that it would be equitable for you and the children to have this standard of income. * * *↩
7. The common law of agency holds that an agent may be appointed in writing or by word of mouth, except when a statute requires written authorization. Mechem, Treatise on the Law of Agency, sec. 211 at 154, secs. 221 and 222 at 164 (2d ed. 1982); 2A C.J.S., Principal and Agent, secs. 43 and 44 (1973); 1 Restatement, Agency 2d↩, sec. 26 (1958).
8. The burden of proof remained on petitioner even though the case was fully stipulated. Rule 142(a), Tax Court Rules of Practice and Procedure; Service Bolt & Nut Co. Trust v. Commissioner,78 T.C. 812, 819 (1982), affd. 724 F.2d 519↩ (6th Cir. 1983).