T.C. Memo. 1997-359


UNITED STATES TAX COURT


KIRK A. KEEGAN, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3458-96.                    Filed August 5, 1997.


        After requesting a legal separation from his wife,
but before a Stipulation and Order to Show Cause was
filed on May 6, 1992, in State court, P made certain
payments to, or on behalf of, his wife in the nature of
support.  P deducted these payments, together with
payments made after May 6, 1992, from his gross income
as alimony pursuant to sec. 215, I.R.C., on his Federal
income tax return for 1992.  R limited P's alimony
deduction to those payments made after May 6, 1992.  On
the facts, <u>Held</u>:  No alimony deduction is allowed under
sec. 215, I.R.C., for payments made by petitioner to
his wife prior to May 6, 1992, since these payments did
not stem from a written separation agreement within the
ambit of sec. 71(b)(2)(B), I.R.C.


Kirk A. Keegan, Jr., pro se.

Christine V. Olsen, for respondent.


MEMORANDUM OPINION

NIMS, Judge: Respondent determined a deficiency in the Federal income tax of Kirk A. Keegan, Jr. (petitioner) for the tax year ended December 31, 1992, in the amount of $8,698, and an accuracy-related penalty pursuant to section 6662(a) in the amount of $1,740.

All section references are to sections of the Internal Revenue Code in effect for the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the sole remaining issue for decision is whether petitioner is entitled to a section 215 alimony deduction in excess of that allowed by respondent for amounts paid for the support of petitioner's wife, Barbara C. Keegan (Mrs. Keegan).

This case was submitted fully stipulated, and the facts as stipulated are so found. This reference incorporates herein the stipulation of facts and attached exhibits. Petitioner resided in Newport Beach, California, at the time he filed his petition.

## Background

Petitioner requested a legal separation from Mrs. Keegan on January 27, 1992. Later that month, petitioner began making payments of between $4,817 and $9,914 a month to, or on behalf of, Mrs. Keegan. An Order to Show Cause scheduled for March 4,

1992, was postponed because petitioner was out of town on business.  An Order to Show Cause scheduled for April 1, 1992, was postponed at the request of opposing counsel.

On May 6, 1992, a Stipulation and Order to Show Cause was filed in the Superior Court of the State of California.  In the Stipulation and Order to Show Cause, the parties agreed that petitioner would make spousal support payments in the amount of $9,000 per month commencing June 1, 1992.

During 1992, petitioner made payments to, or on behalf of, Mrs. Keegan in the total amount of $96,100.  Of that amount, $34,306 was paid prior to the entry of the Stipulation and Order to Show Cause.  Petitioner deducted the entire $96,100 as alimony on line 29 of his Form 1040, U.S. Individual Income Tax Return, for 1992.

Respondent issued a notice of deficiency on December 7, 1995.  Among other things, respondent limited petitioner's deduction for alimony to $61,794, which amount represents support payments made by petitioner to Mrs. Keegan subsequent to the filing of the Stipulation and Order to Show Cause.  Respondent also determined that petitioner was liable for an accuracy-related penalty under section 6662(a) for negligence in the amount of $1,740.  Respondent has since conceded that petitioner is not liable for this penalty.

- 4 -

## Discussion

We must decide whether petitioner may deduct as alimony under section 215 payments to, or on behalf of, Mrs. Keegan in the total amount of $17,934 that were made prior to the entry of the Stipulation and Order to Show Cause on May 6, 1992. Petitioner has conceded that additional payments totaling $16,372 made prior to that date are not deductible.

As a preliminary evidentiary matter, we must decide whether to reopen the record in this case to permit petitioner to include two letters which are attached to petitioner's Memorandum of Authorities filed in lieu of a posttrial brief by direction of the Court. Pursuant to the Court's Order dated June 19, 1997, directing respondent to file, on or before July 9, 1997, any objection to the record's being reopened to receive the letters in evidence, respondent has filed a Notice of Objection to the record's being reopened for this purpose on the grounds of hearsay and undue prejudice. Reopening the record for the submission of additional proof lies within the discretion of the Court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971). Petitioner is not represented by counsel in this case, and in the interest of justice and for completeness we deem it appropriate to receive the two letters in evidence. Respondent is not prejudiced, however, because, as discussed

infra, petitioner has not established that he may deduct under section 215 or any other section the $17,934 of payments remaining in dispute.

One of the letters, dated March 30, 1992 (the March 30, 1992, letter), is from Steven E. Briggs (Briggs), petitioner's attorney in his domestic relations matter, to Mrs. Keegan's attorney. It states in pertinent part that

> In an effort to resolve this pending Order to Show Cause, Dr. Keegan would propose to pay Mrs. Keegan, as and for spousal support the sum of $9,000 per month. * * * If this arrangement is acceptable to your client let me know and I will be happy to write up a stipulation, which would then enable us to take the Order to Show Cause off calendar. [Emphasis added.]

The other letter, dated June 12, 1996 (the June 12, 1996 letter), is from Briggs to petitioner. It states in relevant part that the March 30, 1992, letter

> set forth in writing that we would continue to make the support payments as previously agreed, which you made. * * * All of the payments made between February and May of 1992, were agreed upon by the parties and were the subject of understandings in connection with which the Order to Show Cause hearings were continued * * *.

As has often been stated, deductions are a matter of legislative grace, and taxpayers bear the burden of proving that

they are entitled to any deductions claimed.  Rule 142(a);

INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Section 215 provides generally in the case of an individual that "there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year."  Sec. 215(a).  Section 215(b) further provides that "the term 'alimony or separate maintenance payment' means any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71."

Section 71(b)(1) defines the term "alimony or separate maintenance payment" in pertinent part as any payment in cash received by (or on behalf of) a spouse under a divorce or separation instrument.  Section 71(b)(2) defines the term "divorce or separation instrument" as follows:

> (A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,
>
> (B) a written separation agreement, or
>
> (C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

No decree within the meaning of section 71(b)(2)(A) or (C) was in effect when petitioner made the payments at issue. Rather, petitioner asserts that he is entitled to deduct the

amount of all payments from April 1, 1992, to May 6, 1992 ($17,934), since, he argues, a written separation agreement existed on April 1, 1992, within the meaning of section 71(b)(2)(B), in the form of the March 30, 1992, letter. Respondent contends, on the other hand, that there was no written agreement prior to the entry of the Stipulation and Order to Show Cause.  On that basis, respondent maintains that no alimony deduction for the period prior to May 6, 1992, is allowable.

We have no doubt that the payments at issue were intended to be in the nature of alimony; nevertheless, for reasons which follow, we agree with respondent that the facts of this case show that there was no written separation agreement within the ambit of section 71(b)(2)(B) prior to May 6, 1992.

The term "written separation agreement" is not defined by the Code, the legislative history, or applicable regulations. Bogard v. Commissioner, 59 T.C. 97, 100 (1972); Ewell v. Commissioner, T.C. Memo. 1996-253.  However, we have stated previously that a written separation agreement is a clear, written statement of the terms of support for separated parties. Bogard v. Commissioner, supra at 101.  It must be a writing that constitutes an agreement.  Grant v. Commissioner, 84 T.C. 809, 823 (1985), affd. without published opinion 800 F.2d 260 (4th Cir. 1986).  An agreement requires mutual assent or a meeting of

the minds.  <u>Kronish v. Commissioner</u>, 90 T.C. 684, 693 (1988).  A letter which does not show that there was a meeting of the minds is not a written separation agreement under the statute.  <u>Grant v. Commissioner</u>, <u>supra</u> at 823; <u>Estate of Hill v. Commissioner</u>, 59 T.C. 846, 856-857 (1973).  To be given effect under section 71(b)(2), a written separation agreement "at least requires more than a written statement by one spouse offering to make support payments, and the acceptance of those payments by the other spouse."  <u>Nemeth v. Commissioner</u>, T.C. Memo. 1982-646.  A letter may satisfy the requirements of section 71(b)(2) even in the absence of the parties' signatures if it embodies the terms of a prior oral agreement or understanding.  See <u>Jefferson v. Commissioner</u>, 13 T.C. 1092, 1097-1098 (1949); <u>Osterbauer v. Commissioner</u>, T.C. Memo. 1982-266.

Petitioner cites <u>Azenaro v. Commissioner</u>, T.C. Memo. 1989-224, in support of his position that the March 30, 1992, letter constitutes a written separation agreement.  However, that case is distinguishable from the case at hand.  In <u>Azenaro v. Commissioner</u>, <u>supra</u>, we held that a letter from the attorney for the taxpayer's husband, 1 year after the couple separated, which offered a monthly payment and which was subsequently received and signed by the recipient taxpayer, constituted a valid written separation agreement.  The letter, as acknowledged and accepted

by the taxpayer by her signature on the assent form, was a clear and concise agreement, in written form, delineating the terms under which the husband would support the taxpayer.  The payor-husband's signature on the letter was not necessary for the agreement to be valid, as his attorney acted as his agent and the husband in fact carried out the terms of the agreement.

In contrast to the letter in Azenaro v. Commissioner, supra, the language of the March 30, 1992, letter is unequivocally that of a proposal or offer to negotiate.  ("If this arrangement is acceptable * * *.")  The March 30, 1992, letter was not signed by Mrs. Keegan, nor was any other writing acceding to its terms executed on her behalf.  See Estate of Hill v. Commissioner, supra at 856-857; Harlow v. Commissioner, T.C. Memo. 1984-393 ("A unilateral written statement by a party stating that he is willing to pay his spouse certain sums for her support clearly does not meet the statutory requirement of a written separation agreement.")

Petitioner next cites Jefferson v. Commissioner, supra, in support of his contention that "though the letter itself constituted a proposal, its acceptance made it an enforceable agreement and a 'written instrument' within the meaning of section 71."  However, Jefferson v. Commissioner, supra, is distinguishable from the facts of this case.  In Jefferson v.

Commissioner, supra, we stated that the letter from the taxpayer to his wife "embodied the terms of a prior oral agreement or understanding * * * with reference to periodic payments to be made for the wife's support and maintenance, and that the letter confirmed that oral agreement or understanding." Id. at 1097. (Emphasis added.) The letter relied upon by the taxpayer therein, although it did not bear his wife's signature and no other writing was executed on her behalf, nonetheless clearly recited the parties' prior oral agreement that he would pay his wife a specified sum of support and thus sufficed for purposes of the statutory predecessor of section 215.

In contrast, in the instant case, the March 30, 1992, letter does not memorialize any prior agreement between petitioner and Mrs. Keegan. To the extent that the June 12, 1996, letter from Briggs (purporting to summarize events that occurred 4 years earlier) implies that the March 30, 1992, letter embodies the terms of a previous oral understanding, we think that Briggs mischaracterizes the contents of the earlier letter. In any event, the March 30, 1992, letter fails to confirm such an oral agreement. See id. at 1097.

Petitioner himself acknowledges that the March 30, 1992, letter was a mere proposal, albeit one that was accepted by his wife "on or prior to April 1, 1992." Yet, as mentioned above,

her signature was not on the March 30, 1992, letter, nor was there any other writing executed on her behalf evidencing an agreement. Moreover, it is well settled that the subsequent acceptance of support payments by a spouse, without more, does not transform a unilateral offer into a bilateral agreement. See Harlow v. Commissioner, supra; Nemeth v. Commissioner, supra; Greenfield v. Commissioner, T.C. Memo. 1978-386.

We conclude that, taken together, the March 30, 1992, letter and the fact that petitioner provided support for Mrs. Keegan prior to May 6, 1992, do not rise to the level of a written separation agreement for purposes of sections 71(b)(2) and 215. See Grant v. Commissioner, supra at 822-823; cf. Ewell v. Commissioner, supra. Therefore, we hold that none of the payments that petitioner made before the Stipulation and Order to Show Cause was filed on May 6, 1992, may be deducted by petitioner as alimony under section 215.

To reflect the foregoing,

An appropriate order will be issued, and a decision will be entered under Rule 155.