T.C. Memo. 2000-165

UNITED STATES TAX COURT

THOMAS B. BENHAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9703-98.                          Filed May 22, 2000.

Thomas B. Benham, pro se.

<u>Clinton M. Fried</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  Respondent determined deficiencies in petitioner's Federal income taxes of $6,409 for 1994 and $1,596 for 1995 and an accuracy-related penalty under section 6662(a)[1] of $1,282 for 1994.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner has conceded that he is not entitled to deduct attorney's fees and legal costs associated with his divorce and that he may not deduct in 1994 State taxes paid in 1993. The issues remaining for decision are: (1) Whether petitioner is entitled to deduct payments to his former wife as alimony, and (2) whether part of petitioner's underpayment of tax is due to negligence.

## FINDINGS OF FACT

Petitioner resided in the State of Georgia at the time the petition in this case was filed.

Petitioner is an attorney. He was married to his wife, Leslie Benham, from 1972 until their divorce became final in July of 1996. They have a son.

By 1994, petitioner had for several years provided Leslie Benham with about $2,000 a month by check from his individual account, deposited into a joint checking account, for the payment of household expenses. The household expenses included groceries, utilities, and the mortgage payment on the marital residence.

In the spring of 1994, Leslie Benham threatened to file for divorce from petitioner. Petitioner, however, filed for divorce against Leslie Benham in May of 1994. A "Temporary Agreement" (Agreement) prepared by Leslie Benham's attorney was signed by Leslie Benham and petitioner in July of 1994. The Agreement

included a provision for conditional joint use and possession of the marital residence. The Agreement granted Leslie Benham, upon 10 days' notice to petitioner, exclusive use of the residence. The Agreement also provided for an "alimony" payment of $2,000 a month to Leslie Benham, "contingent on her death", and a payment by petitioner of $700 a month in child support, both beginning July 15, 1994. The Agreement went on to provide, in addition, that petitioner would pay property taxes and insurance for the marital residence and that Leslie Benham would be responsible for paying the utility bills and would pay the monthly mortgage beginning with the amount due in August of 1994.

During the interim between the filing of the divorce action in May and the signing of the Agreement in July of 1994, petitioner and Leslie Benham discussed attempting to reconcile their marriage. As an aid to their reconciliation efforts, petitioner and Leslie Benham signed an agreement on July 15, 1994, in which they both waived the defense of condonation "in this action or any subsequent action" except upon future notice. The condonation agreement provided that it was not to be deemed "a termination of any separation of the parties."

Petitioner remained in the family residence throughout 1994 and most of 1995. During that time there were several periods of reconciliation followed by estrangement. On several occasions, Leslie Benham asked petitioner to vacate the marital residence.

It was Leslie Benham's belief during the entire period that she and petitioner were attempting a reconciliation of their marriage.

From July of 1994 through January of 1995, petitioner made the total monthly payments of $2,700 provided for by the Agreement. Out of the monthly payments she received under the Agreement, Leslie Benham continued to pay the same household expenses she had paid in preceding years.

In February of 1995, petitioner dismissed his divorce suit against Leslie Benham and at the same time entered into a third agreement with her in which the parties agreed to a division of the marital property in the event of a divorce. Leslie Benham subsequently filed for divorce in 1995, and petitioner thereupon left the marital residence.

On his separate individual Federal income tax returns for 1994 and 1995, petitioner deducted $12,000 and $2,000, respectively, as alimony payments to Leslie Benham. He also deducted State income tax paid in 1993 on his return for 1994 and attorney's fees and legal costs associated with his divorce action on both year's returns.

## OPINION

Because petitioner and Leslie Benham resided in the same household in 1994 and in January of 1995, respondent maintains

that petitioner is not entitled to deduct payments made to Leslie Benham under the Temporary Agreement as alimony.

Petitioner argues that because the payments in question were made pursuant to a written separation agreement, it does not matter that he and Leslie Benham resided in the same household while the payments were made.

Section 215 states that "there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments [defined in section 71(b)] paid during such individual's taxable year."  Whether petitioner's payments qualify for deduction therefore hinges on their meeting the definition of "alimony" contained in section 71(b)(1).  Section 71(b)(1) defines the term "alimony or separate maintenance payment"

> The term "alimony or separate maintenance payment" means any payment in cash if --
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Respondent points to the requirements of section 71(b)(1)(C) as disqualifying petitioner's payments from deductibility since (in the case of individuals legally separated under a decree of divorce or of separate maintenance) the payee spouse and the payor spouse cannot be members of the same household. In making his argument, however, respondent has failed to consider the effect of the requirement under section 71(b)(1)(A), and the definition contained in section 71(b)(2).

A payment may be "alimony" if it is a cash payment "under a divorce or separation instrument". Sec. 71(b)(1)(A). A divorce or separation instrument can be any of three types: (1) A decree of divorce or separate maintenance; (2) a written separation agreement; or (3) a decree requiring payments for support or maintenance, other than a decree of divorce or separate maintenance. See sec. 71(b)(2). The separate household requirement of section 71(b)(1)(C) applies by its terms only to an individual legally separated under a decree of divorce or of separate maintenance.

Respondent insists that the parties were never "separated", citing sec. 1.71-1T(b), Q&A-9, Temporary Income Tax Regs., 49 Fed. Reg. 34451, 34455 (Aug. 31, 1984). The regulation states that "a dwelling unit formerly shared by both spouses shall not be considered two separate households" in the case of spouses legally separated under a decree of divorce or separate

maintenance. But respondent overlooks language in the very same provision that states:

> If the spouses are not legally separated under a decree of divorce or separate maintenance, a payment under a written separation agreement or a decree described in section 71(b)(2)(C) may qualify as an alimony or separate maintenance payment notwithstanding that the payor and payee are members of the same household at the time the payment is made.

Petitioner argues, and we agree, that his payments were made under a written separation agreement.

The term "written separation agreement" is not defined by the Code, the legislative history, or applicable regulations. Jacklin v. Commissioner, 79 T.C. 340, 346 (1982); Leventhal v. Commissioner, T.C. Memo. 2000-92; Keegan v. Commissioner, T.C. Memo. 1997-359. We have stated, however, that a written separation agreement is a clear, written statement of the terms of support for separated parties. See Bogard v. Commissioner, 59 T.C. 97, 101 (1972). It must be a writing that constitutes an agreement. See Grant v. Commissioner, 84 T.C. 809, 823 (1985), affd. per curiam without published opinion 800 F.2d 260 (4th Cir. 1986). An agreement requires mutual assent or a meeting of the minds. See Kronish v. Commissioner, 90 T.C. 684, 693 (1988). But a written agreement does not have to be legally enforceable. See Richardson v. Commissioner, T.C. Memo. 1995-554, affd. 125 F.3d 551, 554 (7th Cir. 1997). It is sufficient that it was

entered "in contemplation of a separation status" and includes a statement of the terms of support.  Bogard v. Commissioner, supra at 101.

We find that the Agreement between the petitioner and Leslie Benham was a written separation agreement and that petitioner's payments were made pursuant to the Agreement.

We find that petitioner's payments[2] to Leslie Benham, characterized as alimony under the Temporary Agreement, meet the requirements of section 71(b)(1).  Since the payments by petitioner are alimony, they are deductible under section 215(a).

Respondent has also determined that petitioner underpaid a portion of his income tax due to negligence or intentional disregard of rules or regulations.  Section 6662 imposes a penalty equal to 20 percent of the portion of the underpayment attributable to negligence or disregard of rules or regulations.  See sec. 6662(a) and (b)(1).  Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  See sec. 6662(c).

---

[2]Respondent did not raise any issue concerning, and the record does not reflect, whether the payments by petitioner served to satisfy part of an obligation of petitioner with respect to the marital property.  We therefore do not reach that issue.

The accuracy-related penalty will apply unless petitioner demonstrates that there was reasonable cause for the under-payment and that he acted in good faith with respect to the underpayment. See sec. 6664(c). Section 1.6664-4(b)(1), Income Tax Regs. specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer." Whether a taxpayer acted with reasonable cause and good faith depends on the pertinent facts and circumstances. See McCallson v. Commissioner, T.C. Memo. 1993-528; sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner must show that he was not negligent. See Cluck v. Commissioner, 105 T.C. 324, 339 (1995).

Petitioner explained at trial that he claimed on his return attorney's fees and other litigation costs associated with his divorce action as miscellaneous deductions based on his "literal reading" of section 212, governing expenses for the production of income. He testified that he was in error when he made "an inadvertent computation" and deducted 1993 State taxes on his 1994 Federal tax return.

The record here shows that petitioner is a highly educated individual who has demonstrated some income tax knowledge. We find it unreasonable that petitioner, an attorney, would interpret "literally" a provision allowing the deduction of

expenses for the production of income to permit the deduction of legal expenses for his suit for divorce.  See <u>United States v. Gilmore</u>, 372 U.S. 39 (1963)(finding that expenditures attributable to litigating a divorce are personal regardless of the potential consequences upon the taxpayer's fortunes because the nature of the expense is determined by the origin and character of the claim).  Nor do we accept his explanation for the deduction of his taxes in the wrong year as being with reasonable cause and in good faith.  We find that his explanations do not demonstrate an honest misunderstanding of fact or law that is reasonable in light of his experience, knowledge, and education.

We have considered the other arguments of the parties, and they are either without merit or not necessary in view of our resolution of the issues in this case.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
