T.C. Summary Opinion 2007-213

UNITED STATES TAX COURT

DENIS M. KATCHMERIC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12051-05S.          Filed December 19, 2007.

Denis M. Katchmeric, pro se.

<u>Andrew M. Stroot</u>, for respondent.

DAWSON, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and
this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
year in issue.

The trial was conducted by Special Trial Judge Carleton D. Powell, who died after the case was submitted. The parties have declined the opportunity for a new trial or for supplementation of the record and have expressly consented to reassignment of the case for opinion and decision.

Respondent determined a deficiency of $4,916 in petitioner's Federal income tax for 2002. The only issue remaining for decision is whether petitioner may deduct as alimony under section 215(a) certain payments he made to his wife in 2002. This requires us to decide whether the payments were made pursuant to a written separation agreement under section 71(b)(2)(B) and, therefore, qualify as alimony as defined by section 71(b)(1).[1]

## Background

Most of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are

---

[1] In his amended petition filed in this case, petitioner, who had filed his Federal income tax return for 2002 as "married filing separately" asserted that he should be entitled to file an amended joint income tax return for that year even though his wife would not agree to sign such a return or consent thereto. Special Trial Judge Powell ruled on that issue at trial, stating that "you are not entitled to a joint return status. Your wife has not joined in a joint return. That question is resolved against you." Moreover, if either spouse files a separate tax return for a taxable year, sec. 6013(b)(2)(B) provides that an election thereafter to file a joint return may not be made after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under sec. 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in sec. 6213.

incorporated herein by this reference.  When the petition was filed, petitioner resided in Fairfax County, Virginia.

Petitioner and Karen A. Deluca (Ms. Deluca) were married in 1984.  On October 16, 2001, they separated.  Her attorney notified petitioner by letter dated December 7, 2001, that he had been retained by Ms. Deluca for the purpose of obtaining a divorce.  In the letter, the attorney stated that he was "in the process of preparing a Separation and Property Settlement Agreement" that would incorporate a provision requiring petitioner to pay Ms. Deluca $1,300 per month as spousal support until their marital home was sold, and that after the sale his obligation would be reduced to $1,000 per month.  The letter further stated that the separation agreement, when prepared, would incorporate the following additional terms:

> A. Karen will file for divorce on a no-fault basis, based upon living separate and apart from you continuously, without cohabitation, for the appropriate time required under Virginia law.

> *     *     *     *     *     *     *

> C. You will continue to pay the mortgage on the marital home until it is sold.  Upon the sale of the home, after deduction of the customary costs of sale, you and Karen will divide equally the proceeds.

> D. You will continue to provide health insurance for Karen.

> E. You will retain as your separate property all investments titled in your name alone.  Karen will retain as her separate property all investments titled in her name alone.  In addition, Karen shall retain as her separate property all investments now titled in your joint names.

F. Karen will receive a share of your pension upon your retirement from the government.

G. Each of you will remain responsible for the loan payments, maintenance, and insurance for your respective automobiles.

H. You will pay Karen's attorney fees in connection with completing the Separation and Property Settlement Agreement and obtaining a no-fault divorce.

There is nothing in the record showing that petitioner responded in writing or orally agreeing to any of the items, including spousal support, contained in the letter he received from Ms. Deluca's attorney. However, each month from January through August 2002, and again in November and December, petitioner sent Ms. Deluca a check for $1,300 bearing the notation "Support". Each check was endorsed by Ms. Deluca and deposited in her personal bank account. Petitioner did not make any payments to her for September and October because he learned in September 2002 that Ms. Deluca had directed that their Federal income tax refund for the tax year 2001 claimed on their joint return be deposited into her personal bank account. The tax refund amount was greater than $2,600.

Ms. Deluca's attorney never prepared a separation and property settlement agreement containing the terms described in his letter to petitioner dated December 7, 2001.

Apparently, both Ms. Deluca and petitioner were dissatisfied with their negotiations regarding spousal support, and other assets and property items, because she filed a divorce proceeding in 2002 against petitioner in the Circuit Court of Fairfax County, Virginia, Chancery No. 182004, in which she sought pendente lite relief. Their negotiations continued unsuccessfully. Finally, after conducting hearings, the Circuit Court judge entered a pendente lite order on January 24, 2003, which provided, among other things, that petitioner was to pay directly to Ms. Deluca $1,200 per month as spousal support beginning February 1, 2003. Both parties were represented by counsel in that proceeding.

Petitioner and Ms. Deluca did not enter into any other agreement purporting to be a "written separation agreement" prior to the issuance of the pendente lite order.

On June 25, 2004, a final decree of divorce was entered by Judge Keith of the Circuit Court of Fairfax County, Virginia, which provided for the distributions of marital assets as well as a further reduction in spousal support, as follows:

> ORDERED, ADJUDGED, AND DECREED that beginning in the month of July, 2004, Defendant shall pay Complainant for spousal support and maintenance the sum of Nine Hundred and No Dollars ($900.00) per month. Payments shall be made on the first (1st) day of each month beginning July 1, 2004, and continuing on the first (1st) day of each month thereafter in accordance with Section 20-109, 1950 Code of Virginia, as amended, until the death of either party, or until the remarriage of Complainant or until the Complainant cohabits with an unrelated male in a relationship

analogous to a marriage for a period of more than one (1) year;

AND, IT IS FURTHER ORDERED

   *       *       *       *       *       *       *

5. Support is to be paid by a payroll deduction order to Karen Ann Deluca [listing her savings account number]. The parties shall give each other and the Court at least thirty (30) days written notice, in advance, via certified mail, return receipt requested, of any change of address and any change of telephone number within thirty (30) days after such change;

6. In determination of a support obligation, the support obligation as it becomes due and unpaid creates a judgment by operation of law.

On his Federal income tax return for 2002, which was filed as "married filing separately", petitioner claimed an alimony deduction of $15,600 for amounts he paid to Ms. Deluca in that tax year.

Respondent disallowed petitioner's claimed alimony deduction in the deficiency notice because verification and acceptable documents were not provided.

## Discussion

A taxpayer may deduct alimony or separate maintenance payments. Sec. 215(a). Alimony is any payment in cash if, among other requirements, it is received by (or on behalf of) a spouse under a divorce or separation instrument. Sec. 71(b)(1)(A). The term divorce or separation instrument means: (A) A decree of divorce or separate maintenance or a written instrument incident to such a decree, (B) a written separation agreement, or (C) a

decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse. Sec. 71(b)(2).  No decree (or order) by the Circuit Court of Fairfax County was in effect when petitioner made his payments to Ms. Deluca in 2002.  Thus, we must decide whether there was a written separation agreement in effect before January 24, 2003, when the pendente lite order fixing spousal support was entered by that court.

The term "written separation agreement" is not defined in the Internal Revenue Code, the applicable regulations, or in the legislative history.  Bogard v. Commissioner, 59 T.C. 97, 100 (1972).  A written separation agreement is a clear, written statement of the terms of support for separated parties.  In Bogard v. Commissioner, supra at 101, we stated:

> Logically, it appears Congress was interested in a clear statement in written form of the terms of support where the parties are separated.  In this manner it is administratively convenient for the Commissioner to apprise himself of the amount of gross income to the wife and the corresponding deduction allowable to the husband. * * *

See also Leventhal v. Commissioner, T.C. Memo. 2000-92; Ewell v. Commissioner, T.C. Memo. 1996-253.

Letters which do not show a meeting of the minds between the parties cannot collectively constitute a written separation agreement.  Grant v. Commissioner, 84 T.C. 809, 822-823 (1985), affd. without published opinion 800 F.2d 260 (4th Cir. 1986).  However, we have recognized that where one spouse assents in

writing to a letter proposal of support by the other spouse, a valid written separation agreement has been held to exist. See Azenaro v. Commissioner, T.C. Memo. 1989-224.

Petitioner contends that he is entitled to an alimony deduction of $15,600 for the payments he made to Ms. Deluca in 2002 because the December 7, 2001, letter he received from her attorney contained an offer, among other items, for separation support payments of $1,300 per month, which he accepted when he made payment by checks, marked "support", payable to Ms. Deluca, and cashed by her in 2002. Although petitioner never answered either by letter or orally the proposal for spousal support mentioned in the letter from Ms. Deluca's attorney, he argues that he performed pursuant to an executory contract which satisfied the "written separation agreement" requirement of section 71(b)(2)(B). To the contrary, respondent contends that the facts and circumstances in this case do not establish that petitioner's payments to Ms. Deluca in 2002 were made pursuant to a written separation agreement entered into by them.

We agree with respondent for the following reasons. First, the most that can be said about the attorney's letter to petitioner is that it is only evidence of a prospective course of action. It contained proposals of several terms that might have been included in a future separation and property settlement agreement favorable to Ms. Deluca. It was simply the beginning of a negotiation process by them with respect to spousal support

and the division of their assets and property.  Petitioner obviously did not agree with all of the proposed items listed in the letter.  At best, there was nothing more than a unilateral offer to enter into a separation agreement.  Estate of Hill v. Commissioner, 59 T.C. 846, 856-857 (1973).

Second, petitioner's action in writing checks to Ms. Deluca, bearing the notation "support", does not qualify as a writing showing assent to the attorney's proposal, as required by the statute.  The fact that petitioner made the notations on the checks does not show that he agreed to provide support under a written separation agreement.  See Ewell v. Commissioner, supra. There is no evidence in this record that there was ever any pre-existing written agreement between Ms. Deluca and petitioner that set monthly support payments.  The parties continued to negotiate without success and under contentious conditions during most of 2002.  Petitioner testified that he retained an attorney in March of that year and "then we started negotiating."  Their failure to reach an agreement on the terms of their separation resulted in Ms. Deluca's attorney's filing for her divorce from petitioner in the Circuit Court of Fairfax County, Virginia.  Hearings in that

proceeding culminated in the pendente lite order that required spousal support payments of $1,200 per month beginning February 1, 2003.

Third, there was no meeting of the minds between petitioner and Ms. Deluca with respect to any spousal support payments before the circuit court entered its pendente lite order on January 24, 2003. Grant v. Commissioner, supra at 822-823. That order is strong evidence of the failure of the parties to come to a prior meeting of the minds. Petitioner testified at trial in the instant case that "he wasn't going to pay any more". It was then that Ms. Deluca went to the Circuit Court of Fairfax County and sought the pendente lite order for spousal support. If there had been an existing written separation agreement at that time, the circuit court would surely have honored and enforced it as a binding contract. We think petitioner's declaration to Ms. Deluca that he would no longer continue making monthly payments to her shows that there was not a meeting of the minds with respect to the proposed terms set forth in her attorney's letter of December 7, 2001. What triggered the breakdown in their negotiations for the amount of spousal support was that Ms. Deluca was seeking more while petitioner wanted to pay less. The Circuit Court of Fairfax County resolved their controversy, first by fixing the amount of monthly spousal support at $1,200 in its

pendente lite order, and finally in the final decree of divorce on June 25, 2004, at $900 per month.

Accordingly, on the basis of the facts and circumstances in this record, we hold that petitioner is not entitled to an alimony deduction for the payments he made to Ms. Deluca in 2002 because there was no written separation agreement.  In reaching our holding, we have considered the arguments made by the parties, and, to the extent not mentioned, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.