T.C. Memo. 1998-194


UNITED STATES TAX COURT


GEORGE F. WALKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 663-96.                          Filed May 27, 1998.


George F. Walker, pro se.

<u>Charles M. Ruchelman</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FAY, <u>Judge</u>:  Respondent determined a deficiency of $8,433 in

petitioner's Federal income tax for 1990 and an addition to tax

of $1,952 under section 6651(a)(1)[1] for failing to timely file his 1990 tax return.

Before trial, petitioner conceded that his daughter, Wendy Walker, did not qualify as his dependent under sections 151 and 152 as claimed on his Federal income tax return.  In his opening brief, petitioner conceded that he was liable for the addition to tax under section 6651(a)(1).  The remaining issues for decision are:  (1) Whether petitioner is entitled to claim certain trade or business deductions; (2) whether payments of $2,400 made to his former wife qualify as alimony; and (3) whether petitioner is entitled to file as a "head of household" for 1990.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference.  Petitioner resided in Landover, Maryland, at the time the petition was filed in this case.

During the year in issue, petitioner worked for the District of Columbia Department of Administrative Services.  The office where petitioner worked was located in the Gallery Place area of Washington, D.C.  Petitioner earned approximately $52,728 at his position with the D.C. government.  In 1990, petitioner lived

---

[1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

with Mr. Warren T. Boswell in a house owned by Mr. Boswell. Petitioner rented a bedroom from Mr. Boswell for approximately $200 per month.

Petitioner and his former wife, Mary L. Walker, were married on April 4, 1966. Two children were born of the marriage, Wendy Walker and Stefan Walker. Petitioner and his former wife (here-inafter sometimes referred to as Mary Walker) separated in 1987, and on July 24, 1987, they executed a separation and property settlement agreement (the separation agreement).[2] The separation agreement provides as follows:

> 4. REAL PROPERTY. The parties jointly own a home as tenants by the entirety known as 8910 Landers Road, North Little Rock, Pulaski County, Arkansas, in which neither party lives and which is current on the market for sale. Upon sale of said property, the parties will have equal shares of the equity proceeds after all associated debts are paid. One such associated debt is the repayment to wife the sum of $12,000.00, to be invested into a retirement pension fund on her behalf. At the wife's discretion, she may assign her half of the remaining equity to husband for the purpose of purchasing property to construct condominium apartment building (4-6 units) with a single garage attached. For her equity investment, the husband shall deed to wife one ground level two bedroom unit with the attached garage as wholly owned and free of debt. * * *
>
> 5. AUTOMOBILE. The husband and wife do hereby release and relinquish unto each other, any and all rights, title and interest in and to the following individually and jointly owned automobiles:
>
> a.   1987 Honda Accord        Wife
> b.   1984 Mercedes Benz       Husband

---

[2] The record does not indicate when a formal divorce decree was entered.

    c.    1975 Chevrolet Nova    Husband
    d.    1972 Chevrolet Pickup    Husband
    e.    1973 Ford T-B    Husband

\*     \*     \*     \*     \*     \*     \*

6. HOUSEHOLD FURNITURE AND PERSONAL PROPERTY. The husband hereby covenants and agrees and transfers unto the wife all his right, title and interest in and to the household furnishings, furniture, appliances, bric-a-brac, and all other items of personal property and household effects in the following rooms of home: living room, dining room, master bedroom excluding remote TV, den TV, recreation room TV, her choice of decorating items, washer and dryer, kitchen appliances and dishes/cookware, and den console stereo. The husband shall be entitled to remove all his personal belongings, clothes, and the other household furnishings heretofore agreed upon between the parties hereto. The parties further agree to share equally the remaining funds currently held in escrow for business Chapter II upon release by the Court's Trustee.

7. LIFE INSURANCE. The husband covenants and agrees to maintain and pay all premiums, as and when they become due, on the life insurance policy in the amount of Fifty Thousand Dollars ($50,000.00), with a provision for double indemnity in the event of accidental death, and to retain the wife as the primary beneficiary thereof until she remarries or until her death.

8. TAX REFUND. The husband covenants and agrees the wife shall be entitled to half (½) the Federal and State tax refunds for calendar year 1986. The husband agrees that he will endorse said tax return checks immediately upon receipt and pay to the wife half (½) the proceeds.

\*     \*     \*     \*     \*     \*     \*

10. ALIMONY. The husband does hereby covenant and agree to pay unto the wife as alimony for her maintenance and support, the sum of One Hundred Eighteen Dollars ($118.00) per month, commencing on the first of the month after the date of separation, and for each and every month thereafter until date of February, 1988 and increase to $300.00 per month until

completion of condominium per section 4 and wife is given deed to her unit, or death of the husband.

During 1990, petitioner paid Mary Walker a total of $2,400. Petitioner claimed that these payments were deductible alimony on his 1990 Federal income tax return; however, Mary Walker did not report these payments as income on her 1990 Federal income tax return.

Petitioner filed his 1990 Federal income tax return on May 24, 1993. On Schedule C of this return, petitioner reported gross sales of $900 from a business described as "Management Consulting, Training Development, Jewelry, Multilevel". Cost of goods sold of $483 was reported, and petitioner claimed other expenses totaling $27,485, resulting in a net loss of $27,068.

On May 23, 1994, petitioner filed an amended Federal income tax return for 1990. In the amended return, petitioner filed two Schedules C which separated the activities reported in his original Schedule C as follows:

<u>Schedule C #1</u>

Principal Business:  Minority Student Education Programs
                     Research, Experimentation

```
    Gross receipts . . . . . . . . . . . . . .     -0-
    Gross income . . . . . . . . . . . . . .       -0-
    Expenses
        Car and truck        $9,849.75
        Insurance               401.66
        Interest              1,814.58
        Office expense        1,800.00
        Rent/other prop.        918.00
        Repairs and main.       149.05
        Supplies              1,783.07
```

```
        Travel                 230.99
        Meals and enter.     5,797.18
        Utilities            1,305.27
        Membership             272.00

           Total            24,321.55      $24,321.55

    Net loss . . . . . . . . . . . . . . . .  (24,321.55)
```

### Schedule C #2

Principal Business:  Management consulting, training
                     development, jewelry, multilevel

```
    Gross receipts . . . . . . . . . . . . . $900
    Cost of goods sold . . . . . . . . . . . [1]483

    Gross income . . . . . . . . . . . . . .  417
    Expenses . . . . . . . . . . . . . . . .  -0-
    Net profit . . . . . . . . . . . . . . .  417
```

[1]In the notice of deficiency, respondent disallowed all of petitioner's Schedule C expenses.  Respondent's posttrial brief states that the activity in question is petitioner's minority student education programs, and no mention is made concerning the jewelry, multilevel business.  We therefore take this as a concession by respondent that the $483 cost of goods sold related to petitioner's jewelry, multilevel business is allowable.

Petitioner has conceded that he was not entitled to several of the expenses claimed in his return as originally filed.[3]

At trial, petitioner asserted that his minority student education programs research, experimentation business (minority education business) consisted of minority education programs that

---

[3]Petitioner has conceded that he is not entitled to claim advertising expenses of $1,026 and legal services expenses of $81 as claimed on his original 1990 Federal income tax return.  Further, petitioner has conceded that he is not entitled to $31.88 of the total insurance expense, $777.92 of the total interest expense, and $1,363.65 of the total travel expense claimed on his original 1990 Federal income tax return.

petitioner attempted to sell to local municipalities and school districts. According to petitioner, had a school district purchased one of his minority education programs, that school district would have been eligible for grant money that had been set aside by the U.S. Department of Education. Petitioner claims that he would have prepared the necessary proposal for the local government to receive grant funds from the U.S. Department of Education. As reflected in the zero gross receipts reported on Schedule C-1 of petitioner's Federal income tax return, no municipality or school district purchased a minority education program from petitioner during 1990.

During 1990, petitioner's two children, Wendy and Stefan Walker, attended the University of Central Arkansas as full-time students. Both Wendy and Stefan resided in campus housing in Arkansas, and neither ever stayed in Mr. Boswell's house with petitioner during the year in issue.

OPINION

The first issue for decision is whether petitioner is entitled to the trade or business deductions claimed in his 1990 Federal income tax return. In the notice of deficiency, respondent disallowed petitioner's claimed Schedule C deductions on the grounds that they were not ordinary and necessary expenses of a trade or business or that they were not properly substantiated. In the alternative, respondent determined that the activities to

which the deductions relate were not undertaken for profit. Because we sustain respondent's alternative determination, namely, that petitioner's activities were not undertaken for profit, we do not express an opinion regarding respondent's primary determination.

Respondent's determinations are presumed to be correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Furthermore, deductions are strictly a matter of legislative grace, and petitioner must demonstrate his entitlement to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Whether a taxpayer engaged in an activity with the primary purpose of making a profit is a question of fact. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. While a reasonable expectation of profit is not required, a taxpayer's profit objective must be bona fide. Taube v. Commissioner, 88 T.C. 464, 478-479 (1987). In making this determination, the Court gives more weight to objective facts than to a taxpayer's mere statement of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit. The factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.

On the basis of all of the evidence presented at trial, we conclude that petitioner lacked the requisite profit motive in carrying on his minority education business. Petitioner described his business as minority education programs that local municipalities and school districts would purchase and thereby become eligible for grant money from the Department of Education. However, the record lacks even basic information concerning petitioner's minority education programs. It is unclear what subject matter, or grade level, was being targeted by petitioner's programs. Petitioner did not disclose what type of academic materials were associated with his minority education

programs, nor did he explain how he developed or procured those materials. Petitioner did not offer any books or ledgers relating to this business into the record. Petitioner did not present the Court with a business plan or profit projections.

Other factors also weigh heavily against petitioner. Petitioner does not have a college degree in education. When asked for his credentials, petitioner responded that he was qualified in the academic field because he had successfully raised two children who are high academic achievers. Petitioner did not maintain a separate checking account for the business but paid his claimed business expenses from funds in his personal account. Petitioner did not have a set schedule of time which he devoted to the activity; rather, he worked on the activity whenever he had available time. There is no indication that the business had any assets that would appreciate in value.

An examination of the expenses claimed by petitioner lends further support to our conclusion that petitioner lacked a profit motive. Many of the expenses relate to travel and entertaining, items that have elements of personal pleasure. Petitioner also deducted monthly payments for his property on Lake Anna, a place where petitioner took potential customers fishing. It also appears that petitioner claimed numerous deductions for expenditures that constitute nondeductible personal items. For instance, petitioner deducted various costs related to his

automobile, such as monthly oil changes, registration fees, parking citations, and fees for parking near his D.C. government office.  Petitioner deducted cable subscription fees for his television, monthly fees for his telephone and pager, and the cost of various magazine subscriptions.  Finally, petitioner has a history of starting projects that never become profitable.  For 3 years before and 3 years after the year in issue, petitioner reported net losses from his claimed business activities as follows:

| Year | Activity | Gross Income | COGS & Expenses | Net Profit/Loss |
|------|----------|--------------|-----------------|-----------------|
| 1987 | Management consulting, jewelry & products multilevel marketing | $495 | $23,264.99 | ($22,769.99) |
| 1988 | Management consulting training development jewelry, & multilevel | 649 | 25,071.00 | (24,422.00) |
| 1989 | Management consulting training development jewelry, multilevel | 591 | 20,024.00 | (19,433.00) |
| 1991 | Minority issues & management consulting | -0- | 19,611.00 | (19,611.00) |
| 1992 | Insurance marketing & planning (A.L. Williams) | 530 | 18,830.00 | (18,300.00) |
| 1993 | Computer programming systems analysis, application development | -0- | 10,344.00 | (10,344.00) |
| | Total | 2,265 | 117,144.99 | (114,879.99) |

In summary, petitioner has failed to demonstrate that he undertook the minority education business with the actual and honest objective of making a profit. Accordingly, we find on the basis of the facts and circumstances of this case that petitioner's activity with respect to the minority education business is not an activity engaged in for profit and is therefore subject to the limitations imposed by section 183.

The second issue for decision is whether payments of $2,400 to petitioner's former wife constitute deductible alimony. Petitioner deducted $2,400 for monthly payments made to his former wife pursuant to their separation agreement. Respondent disallowed this deduction in the notice of deficiency.

Section 215(a) permits a deduction for the payment of alimony during a taxable year. Section 215(b) defines alimony by reference to section 71(b). Section 71(b)(1) defines alimony as any cash payment meeting the four criteria provided in subparagraphs (A) through (D) of that section. Accordingly, if any portion of the payments made by petitioner fails to meet the four enumerated criteria, that portion is not alimony and is not deductible by petitioner.

Neither of the parties argues that the requirements of subparagraphs (A), (B), and (C) of section 71(b)(1) have not been satisfied. Their disagreement focuses on the provisions of subparagraph (D). Section 71(b)(1)(D) requires that the payor

spouse must not be liable for any payments under the divorce or separation instrument after the death of the payee spouse.  In the present case, the separation agreement provides that the payments are to cease upon the death of petitioner, while the agreement is silent regarding the obligation to make payments upon the death of petitioner's former wife, Mary Walker. Respondent argues that, since the obligation to make payments does not cease upon the death of Mary Walker, payments made pursuant to the separation agreement do not constitute alimony.

Contrary to respondent's contention, the separation agreement's failure to address the termination of payments upon the death of Mary Walker is not fatal to petitioner's position. Often State law defines the rights of the spouses with regard to postmarriage support payments.  By its terms, the separation agreement is to be construed in accordance with the laws of the State of Maryland.  Maryland law provides that a husband and wife may make a valid and enforceable settlement of alimony.  Md. Code Ann., Fam. Law sec. 8-101(b) (1991).  Under Maryland law, unless the parties agree otherwise, alimony terminates on the death of either party.  Md. Code Ann., Fam. Law sec. 11-108(1) (1991).  We find that petitioner and Mary Walker did not agree that the payments would extend beyond the death of Mary, and therefore, under State law, petitioner's obligation to make payments would cease at her death.  As a result, we conclude that the payments

made by petitioner satisfy the requirement under section 71(b)(1)(D).

Petitioner argues that the payments are alimony made pursuant to the separation agreement. No explanation was given for the discrepancy between the amount paid ($2,400) and that called for in the separation agreement ($300 per month). Respondent contends that the payments made by petitioner relate to the $12,000 debt to Mary Walker pursuant to paragraph 4 of the separation agreement, and therefore the payments are in the nature of a property settlement or the repayment of a loan and not deductible by petitioner.

Generally, we resolve questions as to whether payments are "alimony" or something other than alimony on the basis of all the facts and circumstances of the particular case, including the terms of the spouses' separation agreement or divorce decree. Jacklin v. Commissioner, 79 T.C. 340, 351-352 (1982). In the instant case, we are unpersuaded by respondent's argument that the payments relate to the $12,000 liability mentioned in paragraph 4 of the separation agreement. The separation agreement indicates that the liability was to be satisfied from proceeds received on the sale of the Walkers' marital home in Arkansas, as petitioner contends, and that the repayment was to be invested in a retirement fund on Mary Walker's behalf. Further, there is no evidence to suggest that the payments

constitute interest on some obligation owed to her.  On the basis
of the evidence presented by the parties, we conclude that the
payments in issue constitute alimony, and petitioner is entitled
to deduct them.

The third issue for decision is whether petitioner qualifies
for head of household filing status as defined in section 2(b).
Respondent determined that petitioner was not entitled to head of
household filing status as claimed on his 1990 Federal income tax
return.  Section 2(b) defines "head of a household" as an
unmarried individual who maintains as his home a household which
is the principal place of abode of his child or any other person
for whom the taxpayer is entitled to a dependency exemption.
Section 1.2-2(c)(1), Income Tax Regs., provides as follows:

> (c)  Household.  (1)  In order for a taxpayer to
> be considered as maintaining a household by reason of
> any individual described in paragraph (a)(1) or (b)(3)
> of this section * * * Such home must also constitute
> the principal place of abode of at least one of the
> persons specified in such paragraph (a)(1) or (b)(3) of
> this section. * * * The taxpayer and such other person
> must occupy the household for the entire taxable year
> of the taxpayer. * * * The taxpayer and such other
> person will be considered as occupying the household
> for such entire taxable year notwithstanding temporary
> absences from the household due to special circum-
> stances. A nonpermanent failure to occupy the common
> abode by reason of illness, education * * * shall be
> considered temporary absence due to special circum-
> stances. Such absence will not prevent the taxpayer
> from being considered as maintaining a household if (i)
> it is reasonable to assume that the taxpayer or such
> other person will return to the household, and (ii) the
> taxpayer continues to maintain such household or a
> substantially equivalent household in anticipation of
> such return.

Petitioner contends that, with regard to his son Stefan, the housing arrangement complied with the requirements as set out in the regulations. For petitioner's residence to be considered his son's principal place of abode, petitioner must meet the following three requirements: (1) The special circumstances or necessity of the absence must be a type intended by the statute; (2) it was reasonable for petitioner to assume his son, if ever able, would return to the household, and (3) petitioner maintained the household in anticipation of his return. See Manning v. Commissioner, 72 T.C. 838, 840-841 (1979). The evidence does not support petitioner's contentions.

Petitioner's son, Stefan, spent the entire year in college. He did not stay with petitioner at Mr. Boswell's house for even one night during 1990. Mr. Boswell's home is a three-bedroom house. The owner, Mr. Boswell, slept in one bedroom, petitioner slept in the second, and the third room had a sofa and a shelf of books but no bed. Mr. Boswell credibly testified that he and petitioner never discussed having any of his children stay at the house, and Mr. Boswell stated: "I wouldn't have had the room for them [petitioner's children] anyway." On brief, petitioner candidly admitted that the only reason for one of his children to stay with him would be in the event of an emergency. Ultimately, Stefan graduated from college in 1991, and after graduation he continued to live in Arkansas.

From this record, we do not find it was reasonable to assume Stefan would return home to live with petitioner in Washington, D.C., upon graduation from college.  Further, we do not find that petitioner maintained a household in anticipation of his son's return.  Accordingly, we sustain respondent's determination on this issue.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.